**UNITED STATES of America,**
**Appellee,**

**v.**

**Melvin JAMES, Appellant.**

**No. 729, Docket 73-2561.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 31, 1974.

Decided March 18, 1974.

Jeffrey I. Glekel, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the S. D. N. Y., and John D. Gordan III, Asst. U. S. Atty., on the brief), for appellee.

Gilbert Epstein, New York City, for appellant.

Before WATERMAN and MULLIGAN, Circuit Judges, and BRYAN,* District Judge.

FREDERICK van PELT BRYAN, District Judge:

Melvin James appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York after a jury trial before Judge Pollack. The jury found James guilty on two counts of attempted bank robbery by force and violence and of committing that offense by assault with a dangerous weapon in violation of 18 U.S.C.A. § 2113(a) and (d). He was sentenced to concurrent terms of 15 years' imprisonment, which he is now serving. At a previous trial the jury had disagreed.

On this appeal, James does not question the sufficiency of the evidence at the trial to sustain his conviction; neither does he claim that any errors were committed at the trial. The sole contention on this appeal is that the court below erred in denying motions to dismiss the indictment made by James prior to his first trial and renewed prior to his second. James urges that the indictment should have been dismissed because he was compelled to testify before the Grand Jury which indicted him in violation of his Sixth Amendment rights.

At pre-trial hearings on the motions to dismiss the indictment, the following facts were developed.

On May 29, 1973 Magistrate Hartenstine, in the Southern District of New York, issued a warrant for the arrest of James and one Ramseur, on a complaint charging attempted robbery of the Manufacturers Hanover Trust Company branch on Soundview Avenue in the Bronx. James was speedily apprehended in the District of Columbia. After a preliminary hearing before a United States Magistrate there on June 5, 1973, he was ordered removed to the Southern District of New York.[1] He arrived in New York on June 6, 1973 and was placed in the West Street Federal House of Detention.

On July 13, 1973, over a month after his arrival here, James was brought from West Street to the United States Courthouse and was taken before the Grand Jury which was investigating the attempted bank robbery with which he had been charged in the complaint. He had no counsel and no attempt had been made to have counsel assigned to him.

At the outset of his appearance before the Grand Jury, the examining Assistant United States Attorney advised James that he was a target of the Grand Jury proceedings and that the Grand Jury might indict him for the bank robbery. The Assistant then gave him the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), including his rights to remain silent, to consult counsel, and to have counsel appointed if he could not afford one.

The assistant then proceeded to question him. After some 20 questions had been asked and answered, primarily concerning "pedigree" but including a question as to whether he knew Ramseur, who was charged in the complaint with participating in the robbery,[2] the following colloquy took place:

A. . . . You said I have the right to remain silent unless counsel —I wish to have counsel.

Q. You desire to consult with counsel? A. Right.

Q. Mr. James, let us proceed in this fashion. If we reach a question where you desire counsel, tell me or if there is a question, tell me. Do you understand? A. Yes.

Q. But I have the right to ask you the questions and if you desire to con-

* Frederick vP. Bryan, of the Southern District of New York, sitting by designation.

1. The record of the preliminary hearing in the District of Columbia is not before us, though the Government's brief states that James was represented by counsel at that hearing.

2. James denied knowing Ramseur.

sult with an attorney or if you remain or want to remain silent, so advise me. Do you understand? A. Yes." (App. 1 at 5)

The Assistant then proceeded to question James at length for some six additional pages of the transcript on such subjects as whether he had any knowledge of the robbery, his acquaintance with those who appeared to be involved, his whereabouts at the time, and whether four bank surveillance photographs were pictures of him. James answered the questions without demur. He denied any knowledge of or connection with the robbery and stated that while the four bank surveillance photographs looked like him, he was not certain whether they were pictures of him. In the midst of this questioning the Assistant made a passing reference to James' right to counsel, without any reaction from James. The questioning went on to a conclusion without further reference to the subject.

The Grand Jury also heard the testimony of an FBI agent through whom the bank surveillance photographs were introduced, and that of two eyewitnesses, who described the attempted robbery and identified James from a photographic spread as one of the participants. The Grand Jury returned the bank robbery indictment against James about an hour after James had testified.

At the conclusion of his testimony, James was returned to custody and was not taken before a Magistrate until July 19, six days later, when counsel was finally appointed to represent him.

In the court below the prosecution took the position on the motions to dismiss the indictment that James had been given his full constitutional rights before the Grand Jury. On the basis of the pre-trial hearings on the motions, Judge Pollack found James had been accorded his constitutional rights and that the indictment had been based on evidence before the Grand Jury independent of that given by James. Judge Pol-

lack denied the pre-trial motions to dismiss on these grounds.

On this appeal, in contrast to the position taken below, the prosecution concedes that "the record is insufficient to support a finding that James voluntarily waived his right to consult counsel following his request". (Government brief, p. 6.)

■ There is no doubt that James did not waive his right to counsel. Once he asked for and stated his desire to consult with counsel, all questioning should have ceased until he was assigned counsel and given an opportunity for full consultation. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present", Miranda v. Arizona, *supra*, 384 U.S. at 474, 86 S.Ct. at 1628.

However, there is more here than lack of waiver of right to counsel. When James was summarily brought before the Grand Jury he had been held in West Street for some 40 days on the robbery charge alleged in the complaint which was the subject of the Grand Jury inquiry. New York was not his home city and he was plainly of limited education. Though entitled to counsel promptly after his removal here on the charge made in the complaint, Kirby v. Illinois, 406 U.S. 682, 688–689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), he was kept in custody without counsel and no effort was made to have counsel assigned to him.

The Assistant conducting the Grand Jury proceedings[3] must have known all this when he had James transported from West Street to the Courthouse. No effort was made to obtain counsel for him or to give him an opportunity to consult counsel before he was brought into the Grand Jury room. He was advised of his constitutional rights only when he was put on the stand before the Grand Jury.

■ In the light of the circumstances, the continued questioning after

---

3. Different Assistants handled the appeal.

James had requested counsel, with the suggestion that "if we reach a question where you desire to consult with counsel, tell me", can only be viewed as a cunning and successful device to induce him to answer all questions the examiner wished to put to him, in disregard of his Fifth and Sixth Amendment rights.[4]

The question, then, is whether James was entitled to have the indictment dismissed because of the testimony he was thus compelled to give before the Grand Jury, in violation of his Fifth and Sixth Amendment rights. We conclude that the motions to dismiss were properly denied.

■ An indictment, valid on its face, is not rendered invalid merely because evidence otherwise inadmissible was presented to the Grand Jury, United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L.Ed.2d 561 (1974); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. Jordan, 399 F.2d 610, 615 (2d Cir.), cert. denied, 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469 (1968); see also United States v. Estepa, 471 F.2d 1132, 1136 (2d Cir. 1972); United States v. Ramirez, 482 F.2d 807, 811–813 (2d Cir.), cert. denied, 414 U.S. 1070, 94 S.Ct. 581, 38 L. Ed.2d 475 (1973); even if, as the Su-

preme Court has several times said by way of dictum, such evidence was obtained in violation of the Fifth Amendment rights of the accused, United States v. Blue, 384 U.S. 251, 255 & n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); see also Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). Whether under these cases, including the recent dictum in *Calandra* that "an indictment valid on its face is not subject to challenge . . . even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination" (414 U.S. at 345, 94 S.Ct. at 618), an indictment is wholly immune to challenge on the basis of any constitutional exclusionary rule may still be doubtful. See Goldberg v. United States, *supra,* 472 F. 2d at 516; United States v. Dornau, 491 F.2d 473, 481, n. 15 (2 Cir. 1974). But we need not decide that question here. It is clear that "[w]e will not upset a conviction founded on an indictment based on sufficient, legal and probative evidence because other evidence of doubtful admissibility was also before the grand jury." United States v. Piccini, 412 F.2d 591, 593 (2d Cir. 1969), cert. denied, 397 U.S. 917, 90 S.Ct. 923, 25 L.Ed.2d 98 (1970); United States v.

---

4. We view the failure to have counsel assigned to James during the some forty days he spent at West Street and what occurred when he was brought from West Street and taken before the Grand Jury, with concern and disapproval, and we caution against repetition of such conduct.

There is also at least a question as to the propriety and possible consequences of bringing James before the Grand Jury under the circumstances here. Under such cases as United States v. Winter, 348 F.2d 204 (2d Cir.), cert. denied, 382 U.S. 955, 86 S. Ct. 429, 15 L.Ed.2d 360 (1965), the privilege against self-incrimination does not protect against being called to appear before a Grand Jury. But, as Chief Judge Friendly pointed out in Goldberg v. United States, 472 F.2d 513, 516 (2d Cir. 1973), serious problems may arise where the Government is seeking an indictment of one who is called before the Grand Jury to testify. Chief Judge Friendly further said, 472 F.2d at 516, n. 4:

Despite Lawn v. United States, 355 U.S. 339, 350, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), and United States v. Blue, 384 U. S. 251, 255 & n. 3, 86 S.Ct. 1416, 16 L. Ed.2d 510 (1966), we do not take it to be settled that an indictment would not be subject to dismissal if a defendant could establish that it was obtained on the basis of testimony compelled from him after a proper assertion of his privilege. See Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863, 871–873 (1964) (en banc).

Cf. the dictum of Judge Medina in United States v. Scully, 225 F.2d 113, 116 (2d Cir.), cert. denied, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955).

. . . [O]ne would suppose that, as a matter of ethics or fair play or policy, a prosecutor would in all cases refrain from calling as a witness before a Grand Jury any person who is *de jure* or *de facto* an accused.

Tane, 329 F.2d 848, 853–854 (2d Cir. 1964); see Goldberg v. United States, *supra,* 472 F.2d at 516, n. 4.

 The indictment in this case fully meets this test. It is plain from the minutes of the grand jury that ample evidence was presented to that body to support the indictment, independent of and quite apart from anything James said while he was before it.

James has not shown that he was in any way prejudiced by the violations of either his Fifth Amendment privilege to remain silent or his Sixth Amendment right to counsel before the Grand Jury, or otherwise.[5] He was assigned competent counsel shortly after the indictment, who represented him thereafter. None of this testimony before the Grand Jury was used or referred to at the trial. The evidence at the trial was ample to sustain this conviction and there is no discernible taint.

The judgment of conviction is affirmed.

---

5. The contention that James was deterred from taking the stand in his own defense because the Government could impeach his credibility by equivocal answers he made before the grand jury and thus was prejudiced, is without merit in the light of Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L. Ed.2d 1 (1971).