**UNITED STATES of America, Plaintiff,**

v.

**Bartholomew RIVIECCIO, Defendant.**

**No. 88 CR 283 (S–2) (ERK).**

United States District Court,
E.D. New York.

Sept. 5, 1989.

Andrew J. Levander, Scott A. Korenbaum, New York City, for defendant.

Andrew J. Maloney, U.S. Atty. by Nicholas DeFeis, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

### MEMORANDUM & ORDER

KORMAN, District Judge.

On May 5, 1988, a grand jury sitting in the Eastern District of New York returned

a four count indictment against the defendant Bartholomew Rivieccio. A superseding indictment was returned on July 21, 1988, and a second superseding indictment, containing twenty-nine counts, was returned on November 3, 1988. All three indictments were returned by a grand jury impanelled on February 1, 1988.

The indictments charged Rivieccio with fraudulently obtaining over ten million dollars in loans from the Hyfin Credit Union and an additional seventeen million dollars in loans from the Chemical Bank. The initial four count indictment involved only charges arising out of the Chemical Bank loan. The first superseding indictment added additional counts relating to the Hyfin Credit Union loans and the last superceding indictment made language changes in some of the counts relating to the Hyfin Credit Union loans.

The defendant did not testify before the grand jury that returned the original and two superseding indictments. The defendant did appear before another grand jury for the purpose of producing corporate documents of which he was the custodian. This testimony was given after he had invoked the privilege against self-incrimination and after he had been ordered to testify. The order compelling his testimony was entered pursuant to 18 U.S.C. § 6002 (1985) which provides that "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case...." [1]

On October 25, 1988, a week before jury selection was scheduled to commence, the defendant belatedly filed a number of pretrial motions. One of these sought an order "dismissing the indictment on the grounds that the government has violated Mr. Rivieccio's rights or privilege against self-incrimination guaranteed to him by the Fifth Amendment ... because Mr. Rivieccio was compelled to testify before a Grand Jury herein, and the information obtained thereby has been illegally used against him. *United States v. Hinton*, 543 F.2d 1002 [(2nd Cir.1976)], *Kastigar v. United States*, 406 U.S. 441 [92 S.Ct. 1653, 32 L.Ed.2d 212] (1972)." Letter of John A. Jasilli, October 25, 1988, at 2.

Because the primary focus of the pre-trial hearing mandated by *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) is on the source of the evidence the government proposes to use at trial, *id.* at 461, 92 S.Ct. at 1665, rather than on the evidence before the grand jury, it seemed appropriate to delay the hearing on the defendant's eleventh hour motion so that the issue whether his Fifth Amendment rights were infringed could be determined with the aid of a fully developed trial record. *See United States v. Williams*, 644 F.2d 950, 952–53 (2d Cir.1981).

The defendant now stands convicted of the multi-million dollar fraud of which he was accused. A post-trial hearing was held to determine whether any evidence used against the petitioner at trial was derived in any way from his compelled testimony. At such a hearing, "[o]ne raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Kastigar*, 406 U.S. at 461–62, 92 S.Ct. at 1665; *United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966). At the hearing here, it was conceded that all the evidence introduced at trial, with the exception of the testimony of one witness,

---

**1.** The order was entered before the Supreme Court held in *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), that the custodian of corporate records could not assert the privilege against self-incrimination in response to a subpoena to produce corporate records and was, therefore, not entitled to the limited use immunity provided by 18 U.S.C. § 6002. 108 S.Ct. at 2295. Under the holding in *Braswell,* an exclusionary rule apparently implied from the Fifth Amendment would provide the witness with the protection to which he was entitled: "[I]n a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian." Id.

Ralph Strafaci, was derived from "legitimate independent sources."

■ The defendant argued that the United States Attorney learned about Ralph Strafaci from the testimony given by the defendant and that, even if the United States Attorney knew of Ralph Strafaci prior to the defendant's grand jury appearance, it was the defendant's testimony that caused the prosecutor to "focus" on Strafaci. The evidence, however, clearly demonstrates that Mr. Strafaci's identity, his role as the defendant's accountant, and his usefulness as a witness, were known to the United States Attorney prior to the defendant's appearance before the grand jury.

During the *Kastigar* hearing, Anthony Valenti, a criminal investigator on the staff of the United States Attorney, testified that on April 9, 1986, prior to the defendant's appearance before the grand jury, he had encountered Strafaci at the Bart Construction and Development Company when he executed a search warrant for those premises: "Mr. Strafaci was doing some work at the desk and I asked him who he was, he identified himself and he said that he was the accountant for the corporations." Tr. 7, March 17, 1989.

Mr. Valenti's testimony is corroborated by the transcript of a proceeding before Judge Glasser on January 9, 1987, some six months before the defendant testified before the grand jury. The issue there was a dispute over subpoenas issued for the books and records of seventeen real estate corporations through which the defendant transacted business and through which loans from Hyfin were funnelled. In the course of the proceeding, the Assistant United States Attorney told Judge Glasser:

Add to that a statement by an attorney by the name of Ben Fonti, and the best spelling I have is F–O–N–T–I, which was made approximately a month ago in a telephone conversation with Assistant United States Attorney Michael Gold. Mr. Fonti is an attorney for Mr. Strafacci, who is the accountant for Bart Rivieccio. During the course of the conversation, Mr. Fonti advised A.U.S.A. Gold that all of Rivieccio's [corporate] documents were turned over at Rivieccio's directions by Strafaci, the accountant to the law firm of Kostelanetz and Ritholz.

\*　\*　\*　\*　\*　\*

Whatever documents were important enough to be maintained in the files of Mr. Rivieccio's accountant, were turned over to the attorneys for Mr. Rivieccio at his directions.

Tr. 10, 11, 12, January 9, 1987.

The evidence plainly establishes that the United States Attorney knew the identity of Ralph Strafaci and the significance of his role before the defendant told the grand jury that Ralph Strafaci "did accounting and did the tax work for all the different corporations." Exh. 3500–4, at 11. While it is true that Strafaci was not called to testify before the grand jury until April, 1988, some nine months after the defendant testified, there was simply nothing in the defendant's testimony before the grand jury (which only repeated what Strafaci had earlier himself told Valenti and what Strafaci's attorney had earlier told the same Assistant United States Attorney who questioned the defendant) that would have caused the United States Attorney to "focus" on Strafaci.

■ The defendant's only other claim with respect to the impermissible use of his testimony at trial relates to the admission Mr. Valenti candidly made during the post-trial hearing that, after the defendant testified before the grand jury, Mr. Valenti asked the Assistant United States Attorney how the defendant "reacted to questioning, what he was like so that later on down the road certain decisions, strategic decisions might be important." Specifically, Valenti, was interested in how "did he react to questions. How many times did he go out to talk to his lawyer, stuff like that, that's all." Tr. 18–19, April 13, 1989.

In *United States v. Mariani,* 851 F.2d 595, 600 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989), the Court of Appeals declined to follow reasoning that would "foreclose the prosecution of an immunized witness where his immunized testimony might have tan-

gentially influenced the prosecutor's thought processes in preparing the indictment and preparing for trial." This holding is dispositive here. The defendant did not take the stand and any possible advantage derived from hearing about the kind of witness he would make was not put to any use. *See United States v. Gallo*, 863 F.2d 185, 190 (2d Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989).

Because the United States Attorney has demonstrated an independent source for all the evidence introduced at trial, the defendant's motion is directed primarily to evidence before the grand jury. The essence of his claim is that, even if his conviction is based on evidence that has an independent source and even if a new indictment could be obtained on the basis of the untainted trial record, the conviction must nevertheless be set aside and the present indictment must be dismissed because some of the evidence before the grand jury was tainted.

### Discussion

■ The threshold issue is whether a defendant, who has been convicted after a trial at which all of the evidence was untainted, should be permitted to obtain posttrial dismissal of the indictment on the ground that some of the evidence before the grand jury was tainted. There are two separate lines of authority that suggest that the defendant is foreclosed from "pick[ing] over the evidence" before the grand jury for this purpose. *United States v. Remington*, 208 F.2d 567, 574 (2d Cir.1953), *cert. denied*, 347 U.S. 913, 74 S.Ct. 476, 98 L.Ed. 1069 (1954) (L. Hand, J., dissenting).

The defendant's motion to dismiss collides first with what Chief Justice Burger has described as "a line of cases in this Court holding that an indictment returned by a properly constituted grand jury is not subject to challenge on the ground that it was based on unconstitutionally obtained evidence." *United States v. Washington*, 431 U.S. 181, 185 n. 3, 97 S.Ct. 1814, 1818 n. 3, 52 L.Ed.2d 238 (1977). The earliest of those cases is *Holt v. United States*, 218 U.S. 245, 248, 31 S.Ct. 2, 4, 54 L.Ed. 1021 (1910). There the defendant alleged that his coerced confession, which had been excluded from evidence at trial, had been offered into evidence before the grand jury and that aside from this confession "there was very little evidence against the accused." *Id.* at 248, 31 S.Ct. at 4.[2] In declining to even consider the issue whether the district court abused its discretion in rejecting the defendant's motion to quash the indictment, Justice Holmes wrote:

> All that the affidavit disclosed was that evidence in its nature competent, but made incompetent by circumstances, had been considered along with the rest. The abuses of criminal practice would be enhanced if indictments could be upset on such a ground.

*Id.* at 249, 31 S.Ct. at 5.

The Supreme Court has consistently adhered to the holding in *Holt* particularly as it applies to claims by the defendant that the grand jury heard evidence obtained in violation of the privilege against self-incrimination. In *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), it held that the defendants were not entitled to a hearing to determine whether the grand jury that indicted them heard

**2.** The basis for Holt's objection to the use of his confession appears in his brief in the Supreme Court. There he argued:

> In the case at bar it is obvious, as the court below found, that the alleged confession of guilt by the plaintiff in error, Holt, which was placed before the grand jury, was involuntary. The fact that his involuntary testimony against himself was placed before the grand jury through an intermediary and was used by the grand jury in returning an indictment against him, we believe to be the same in principle as if he had been compelled to personally go before the grand jury and give the same testimony. To uphold an indictment against the plaintiff in error, Holt, is for this high court to encourage the creation of an inquisitorial body of one or more persons whose duty it shall be to wring from the unwilling lips of an accused person by promise, torture or fear, self accusations which may then be laid before the grand jury as a basis for placing such person in jeopardy.

Brief for Plaintiff in Error at 24, *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910) (No. 474).

evidence derived from materials they had been forced to produce before another grand jury in violation of the privilege against self-incrimination. After reaffirming the holding in *Holt,* the Supreme Court observed:

> It should be unnecessary to say that we are not here dealing with the use of incompetent or illegal evidence in a trial on the merits, nor with the right to decline to give incriminating testimony in legal proceedings or to suppress the direct or derivative use at the trial of evidence illegally obtained. We deal here only with the question whether petitioners, in the circumstances of this case, were entitled to a preliminary hearing to enable them to satisfy their unsupported suspicions that the 1953 grand jury that returned this indictment made direct or derivative use of the materials which they produced before the 1952 grand jury. We hold that they were not.

*Id.* at 350, 78 S.Ct. at 318.

Again, in *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966), the defendant unsuccessfully argued that an indictment should be dismissed on the ground that the prosecution had obtained evidence in violation of the defendant's privilege against self-incrimination. The Supreme Court observed that, even if "tainted evidence was presented to the grand jury ... our precedents indicate this would not be a basis for abating the prosecution pending a new indictment, let alone barring it altogether." 384 U.S. at 255 n. 3, 86 S.Ct. at 1419 n. 3 (citing *Lawn* and *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956)). This very language was again cited in *Gelbard v. United States,* 408 U.S. 41, 60, 92 S.Ct. 2357, 2367, 33 L.Ed.2d 179 (1972), where the Supreme Court observed:

> The "general rule," as illustrated in *Blue,* is that a defendant is not entitled

to have his indictment dismissed before trial simply because the Government "acquire[d] incriminating evidence in violation of the [law]," even if the "tainted evidence was presented to the grand jury."

Similarly, in *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), *Lawn* was again cited in support of the principle that:

> [T]he validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, *Costello v. United States,* [350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956)], *Holt v. United States,* 218 U.S. 245 [31 S.Ct. 2, 54 L.Ed. 1021] (1910); or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination, *Lawn v. United States,* 355 U.S. 339 [78 S.Ct. 311, 2 L.Ed.2d 321] (1958).

*Id.* at 344–45, 94 S.Ct. at 618. More recently, the Supreme Court cited *Lawn* for the broad proposition "that even the grand jury's violation of the defendant's right against self-incrimination does not trigger the Grand Jury Clause's right 'not to be tried.'" *Midland Asphalt Corp. v. United States,* — U.S. —, 109 S.Ct. 1494, 1499, 103 L.Ed.2d 879 (1989).

While the use of immunized testimony before the grand jury has been held to violate 18 U.S.C. § 6002, *United States v. Hinton,* 543 F.2d 1002, 1009 (2d Cir.1976), there is no indication that Congress intended to alter the traditional rule and provide a remedy for that violation which would be "enforcible [sic] by an individual." S.Rep. No. 1097, 90th Cong., 2d Sess. 106, *reprinted in* 1968 U.S.Code Cong. & Admin.News, 2112, 2195.[3] On the contrary, because

---

3. S.Rep. No. 1097 sets out the legislative history of 18 U.S.C. § 2515 and is of particular significance in explaining the rationale for denying a remedy even where an explicit statutory exclusionary rule has been violated. Section 2515 provides that no "wire or oral communication ... and no evidence derived therefrom may be received in evidence in any ... grand jury

... if the disclosure of that information would be in violation of this chapter". The legislative history, however, makes clear that the remedy for the violation of § 2515 is a motion to suppress evidence at trial: "Normally, there is no limitation on the character of evidence that may be presented to a grand jury, *which is enforcible [sic] by an individual. (Blue v. United States,*

"[t]he real evil aimed at by the Fifth Amendment's flat prohibition against the compulsion of self-incriminatory testimony was that thought to inhere in using a man's compelled testimony to punish him," *Feldman v. United States*, 322 U.S. 487, 500, 64 S.Ct. 1082, 1088, 88 L.Ed. 1408 (1944) (Black, J., dissenting),[4] the suppression of the defendant's compelled testimony at trial is all that the Self–Incrimination Clause or Section 6002 requires.[5] As Judge Van Graafeiland recently concluded, the legislative history of 18 U.S.C. §§ 6002 and 6003 shows that "Congress did not intend that a violation of those sections would result in a per se constitutional injury requiring dismissal of the indictment." *United States v. Gallo*, 859 F.2d 1078, 1090 (2d Cir.1988), *cert. denied sub nom. Miron v. United States*, — U.S. —, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989) (Van Graafeiland, J., concurring). Instead, "the remedy for violation of the proposed law would be suppression of tainted evidence, not dismissal of the indictment." *Id.*[6]

The holdings of the Court of Appeals for the Second Circuit likewise reject the remedy of dismissal even where the grand jury has heard evidence obtained in violation of the constitution or admitted in contravention of some privilege. *United States v. Myers*, 635 F.2d 932, 941 (2d Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); *United States v. Amrep Corp.*, 560 F.2d 539, 547 (2d Cir.1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 731, 54

L.Ed.2d 759 (1978); *In re Millow*, 529 F.2d 770, 741 (2d Cir.1976); *United States v. Colasurdo*, 453 F.2d 585, 596 (2d Cir.1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). The only significant points of departure are cases in which the indictment rested solely on tainted evidence, *United States v. Tane*, 329 F.2d 848, 853 (2d Cir.1964); *United States v. James*, 493 F.2d 323, 326 (2d Cir.), *cert. denied*, 419 U.S. 849, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974), or cases in which a defendant was indicted by the same grand jury before which he gave immunized testimony. *United States v. Hinton*, 543 F.2d 1002 (2d Cir.1976). *See also United States v. Tantalo*, 680 F.2d 903, 909 (2d Cir.1982); *United States v. Anzalone*, 555 F.2d 317, 319 (2d Cir.1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *Goldberg v. United States*, 472 F.2d 513, 516 (2d Cir.1973); *but cf. United States v. Dornau*, 491 F.2d 473, 481 n. 15 (2d Cir.), *cert. denied*, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974).

The defendant here relies on the exception to the general rule marked by the holding in *United States v. Hinton*. There, the Court of Appeals held that, "as a matter of fundamental fairness, a Government practice of using the same grand jury that heard the immunized testimony of a witness to indict him after he testifies, charging him with criminal participation in the matters being studied by the grand jury, cannot be countenanced." Ac-

---

[*U.S. v. Blue*], 384 U.S. 251 [86 S.Ct. 1416, 16 L.Ed.2d 510] (1965 [1966])). There is no intent to change this general rule." S.Rep. No. 1097, 90th Cong., 2d Sess. 106, *reprinted in* 1968 U.S. Code Cong. & Admin.News, 2112, 2195 (emphasis supplied).

**4.** As Professor Levy has written:

[The privilege against self-incrimination] became ... one of the ways of fairly determining guilt or innocence, like trial by jury itself; it became part of the due process of the law, a fundamental principle of the accusatorial system. The right implied a humane or ethical standard in judging a person accused of crime, *regardless how heinous the crime or strong the evidence of his guilt*. It reflected consideration for the human personality in that respect, but it also reflected the view that

society benefited by seeking his conviction without the aid of his involuntary admissions. Forcing self-incrimination was thought not only to brutalize the system of criminal justice but to produce weak and untrustworthy evidence.

Leonard W. Levy, *The Origins of the Fifth Amendment* 332 (1968).

**5.** 18 U.S.C. § 6002, "which operates after a witness has given incriminatory testimony" is intended to assure that his "compelled testimony can in no way lead to the infliction of criminal penalties," *Kastigar*, 406 U.S. at 461, 92 S.Ct. at 1665.

**6.** The Court of Appeals in *Hinton* suggested that dismissal was the appropriate remedy there because of the unusual circumstances of that case. 543 F.2d at 1008 n. 7.

cordingly, in exercise of its "supervisory power," the Court of Appeals reversed the judgment of conviction with instructions that the indictment be dismissed. *Id.* at 1010.

The Court of Appeals distinguished *Hinton* from the "cases since *Kastigar* in which appellate courts were faced with the claim that evidence was improperly derived from immunized testimony, or that the immunized testimony was itself improperly used," because "[n]one of them involved the situation where the same grand jury which heard a witness's testimony returned an indictment against that witness based upon facts about which the witness testified." *Id.* at 1008–09. The facts in *Hinton* were distinguished from *Lawn* on similar grounds:

> *Lawn* involved two successive grand juries, the first of which heard defendants' testimony and received their records, and the second of which returned the indictment upon which they were tried. In direct contrast to the instant case, the defendants in *Lawn* "had no reason, beyond suspicion, to believe that the [second] grand jury considered any of the materials produced by petitioners before the [first] grand jury." 355 U.S., at 348–49, 78 S.Ct., at 317. Where the grand jury which hears the witness's testimony and the grand jury which indicts is the same grand jury, as here, consideration of the immunized testimony by that jury is a virtual certainty.

*Id.* at 1008 n. 7.

Unlike the defendant in *Hinton*, however, the defendant here did not allege that he testified before the same grand jury that indicted him. The pre-trial motion he filed was based on nothing more than "suspicion" that improper use was made of testimony that he gave before another grand jury almost a year earlier. Whether that suspicion has now been confirmed is beside the point. If the pre-trial motion should have been denied without a hearing, the fact that the defendant was given broad latitude to "pick over the evidence" before the grand jury, so that the record

would be complete, does not entitle him to any relief at this point.

On the contrary, the fact that the defendant has been tried and convicted on an untainted record provides another, albeit "narrower," ground for denying the motion to dismiss the indictment. *United States v. Mechanik*, 475 U.S. 66, 72 n. 2, 106 S.Ct. 938, 943 n. 2, 89 L.Ed.2d 50 (1986). In *Mechanik*, the Supreme Court addressed the issue whether a judgment of conviction should be reversed because two witnesses testified in tandem before the grand jury. The Court of Appeals had held that the simultaneous presence of those witnesses violated Fed.R.Crim.P. 6(d) and reversed the conviction. The Supreme Court, however, concluded that the violation of Rule 6(d) was not one which justified reversal of a judgment of conviction. Rule 6(d) was intended to assure that a defendant not "be required to defend against a charge for which there is no probable cause to believe him guilty" by insulating the grand jurors from " 'undue influence that may come with the presence of an unauthorized person.' " *Id.* at 70, 106 S.Ct. at 941.

While the "error involving Rule 6(d) in these cases had the theoretical potential to affect the grand jury's determination whether to indict.... the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." *Id.* Accordingly, the Supreme Court observed, "[m]easured by the petit jury's verdict ... any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.* This reasoning is equally applicable here.

One of the purposes of 18 U.S.C. § 6002, is to assure that the grand jury's decision to indict is not influenced by evidence derived from the compelled testimony of the defendant. *United States v. Hinton*, 543 F.2d at 1009. Whether evidence derived from the defendant's compelled testimony here affected the grand jury's determination to indict, it is clear that the petit jury's subsequent guilty verdict was based on

evidence derived entirely from legitimate independent sources. This verdict means that there was probable cause to believe that the defendant was guilty uninfluenced by evidence derived from his compelled testimony. Here, as in *Mechanik,* "[m]easured by the petit jury's verdict ... any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Mechanik,* 475 U.S. at 70, 106 S.Ct. at 942.

Moreover, even if the defendant was entitled, prior to trial, to vindicate his right to a charging decision by the grand jury uninfluenced by the evidence derived from his immunized testimony, "there is no simple way after the verdict to restore the defendant to the position in which he would have been had the indictment been dismissed before trial." *Mechanik,* 475 U.S. at 71, 106 S.Ct. at 942. As the present Chief Justice continued in his opinion for the Court in *Mechanik:*

> [The defendant] will already have suffered whatever inconvenience, expense, and opprobrium that a proper indictment may have spared him. In courtroom proceedings as elsewhere, "the moving finger writes; and, having writ, moves on." Thus reversal of a conviction after a trial free from reversible error cannot restore to the defendant whatever benefit might have accrued to him from a trial on an indictment returned in conformity with Rule 6(d).

*Id.*

The force of this reasoning is not diminished by the fact that the hearing on the defendant's pre-trial motion was deferred until after trial. The defendant's claim that somehow "it would be wrong" to preclude post-trial consideration of the merits of his motion under these circumstances, Tr. 65, May 30, 1989, suggests an element of unfairness that is simply not present here. The disposition of the pre-trial motion was not deferred in order to deprive the defendant of a remedy to which he would otherwise have been entitled. More significantly, if the defendant's pre-trial motion to dismiss the indictment had been granted, he would have been reindicted and convicted. The position he would have been in is precisely the same one he is in now except that he would have been deprived of the opportunity to argue that his conviction should be reversed because of the errors in the grand jury proceeding of which he now complains. Indeed, as a practical matter, the only reason a defendant has to press a pre-trial motion based on a curable error in the grand jury proceeding is the hope that it will be erroneously denied or deferred, thereby setting the stage for the reversal of a subsequent conviction. The last thing a defendant wants is a new untainted indictment before trial. This may explain why the defendant here waited until jury selection to make a motion he contemplated making even before the indictment was returned.

*Mechanik* puts an end to such gamesmanship by holding that post-conviction review should be limited to those claims that bear on the outcome of the trial and that claims of error in grand jury proceedings that are not correctly resolved before conviction should be viewed as harmless *per se. Lopez v. Riley,* 865 F.2d 30, 33 (2nd Cir.1989). While this case does not appear to come within any of the limited exceptions contemplated by *Mechanik,* 475 U.S. at 70 n. 1, 106 S.Ct. at 942 n. 1, the Court of Appeals has suggested that *Mechanik* may not preclude post-trial review of the claims asserted in the defendant's pre-trial motion. *United States v. Helmsley,* 864 F.2d 266, 270 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2063, 104 L.Ed.2d 628 (1989).[7] Such post-trial review, however, avails the defendant little here. Be-

---

**7.** In *United States v. Helmsley,* the Court of Appeals dismissed an appeal from a pre-trial order denying a motion to dismiss an indictment. The suggestion in *Helmsley* "that defendant may raise her allegations of grand jury abuse of process after trial," 864 F.2d at 270, may have been a concession that the Court of Appeals felt was required to avoid the necessity of sanctioning pre-trial appellate review of all orders involving grand jury abuse of process. The subsequent holding of the Supreme Court in the *Midland Asphalt* case, however, establishes that pre-trial appellate review of such orders is not an inevitable consequence of denying post-trial review of such claims. *Midland Asphalt,* 109 S.Ct. at 1498.

cause the defendant was not indicted by the same grand jury that heard his immunized testimony, he would be entitled to prevail on his pre-trial motion only if he could show that the grand jury did not have before it any other competent evidence to support the indictment. *United States v. Tane*, 329 F.2d 848, 853 (2d Cir.1964). *See United States v. Myers*, 635 F.2d 932, 941 n. 10 (2d Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); *United States v. James*, 493 F.2d 323, 326–27 (2d Cir.), *cert. denied*, 419 U.S. 849, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974); *Jones v. United States*, 342 F.2d 863, 873 (D.C.Cir. 1964) (en banc).[8]

This standard differs from that used to determine whether a judgment of conviction should be reversed because of the admission of illegally obtained evidence at trial. Unlike a judgment of conviction, which will be reversed if there is a reasonable possibility that the evidence complained of might have contributed to the conviction, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), an indictment will not be dismissed even if the evidence may have affected the decision to indict. As Judge Learned Hand explained:

> This has been the rule, in spite of the obvious fact that the same reasoning by which courts upset the verdict of a trial jury, applies as much to the finding of an indictment: i.e., the incompetent evidence may have furnished the makeweight that turned the scale. The answer has ordinarily been that a grand jury need only be satisfied that there is reasonable ground to suppose the accused guilty; and that an indictment is only an accusation, which must be followed by a trial at which all incompetent evidence will be winnowed out. Even as *res integra*, I should think the same. There are so few

occasions when it is possible for the accused to get access to the proceedings of a grand jury, that an opposite rule would at best work capriciously; and in any event the answer depends upon whether the hindrance to the effective punishment of crime by allowing the accused to pick over the evidence does not outweigh any injustice he may suffer, if that privilege be denied him.

*United States v. Remington*, 208 F.2d 567, 574 (2d Cir.1953), *cert. denied*, 347 U.S. 913, 74 S.Ct. 476, 98 L.Ed. 1069 (1954) (L. Hand, J., dissenting).

While the Supreme Court has not approved even this limited exception to the general rule "that an indictment returned by a properly constituted grand jury is not subject to challenge on the ground that it was based on unconstitutionally obtained evidence," *United States v. Washington*, 431 U.S. at 185 n. 3, 97 S.Ct. at 1818 n. 3, there is no suggestion here that other competent evidence before the grand jury was insufficient to sustain the indictment. Specifically, taking at face value the allegations regarding the misuse of the defendant's testimony, all of the alleged misuse did no more than serve to authenticate documents that were otherwise authenticated by other witnesses or that a grand jury would have accepted as authentic in the absence of any suggestion to the contrary.

Because the documents at issue were concededly authentic, because it is arguable whether the formal authentication of such documents is even required before the grand jury and because there was other compelling evidence before the grand jury, the defendant has resisted the application of the somewhat more stringent test adopted by the Supreme Court for determining when otherwise cognizable errors occurring before the grand jury require the

---

**8.** In *United States v. Kurzer*, 534 F.2d 511 (2d Cir.1976), without discussing the propriety of the remedy of dismissal, the Court of Appeals reversed a pre-trial order dismissing an indictment and remanded a case to the district court for further proceedings relating to the circumstances that induced a critical witness to provide testimony which led to the indictment of the defendant. While the remand was premised on the assumption that a dismissal was warranted if the decision of the witness to testify was a consequence of the defendant's immunized testimony, it appears that *Kurzer* was a case in which the indictment rested solely on tainted evidence. *Id.* at 514. Under such circumstances, the dismissal of the indictment would clearly be appropriate. *United States v. Tane*, 329 F.2d 848, 853 (2d Cir.1964).

dismissal of the indictment before trial, *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988),[9] or the "harmless beyond a reasonable doubt" standard applied to a materially different alleged misuse of immunized testimony in *United States v. Gallo,* 859 F.2d at 1083.[10] Def. Memo of Law, at 15 n. 6; Def. Reply Memo, at 11–12. While

**9.** The Supreme Court has never sanctioned any departure from the settled rule that claims of the kind asserted here are not cognizable. Indeed, in *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988), the Supreme Court cited *United States v. Calandra,* 414 U.S. 338, 344–45, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974), one of the many cases that so hold, for the proposition that an indictment valid on its face is not subject to "a challenge to the reliability or competence of the evidence presented to the grand jury." *Bank of Nova Scotia,* 108 S.Ct. at 2377.

**10.** In *United States v. Gallo,* one of the defendants, Julio Miron, argued that his immunized testimony was used in an affidavit in support of an order authorizing electronic surveillance. "[T]he parties agree that the evidence against Miron developed through the electronic surveillance authorization was the basis for his conviction." *Gallo,* 859 F.2d at 1083. The issue was whether the use of the immunized testimony to obtain the electronic surveillance authorization was harmless because of the compelling nature of other untainted evidence submitted in support of the authorization application. The harmless beyond a reasonable doubt standard, which was applied there, was clearly appropriate because the issue was whether the conceded misuse of the defendant's immunized testimony led to evidence upon which he was convicted. Unlike *Gallo,* here the only misuse of the defendant's immunized testimony occurred before the grand jury and it did not lead to his conviction.

**11.** The defendant argues that Elizabeth Cataldo, who testified before the grand jury after the initial indictment was returned and who did not testify at trial, was a "tainted" witness. The United States Attorney has established an independent untainted source for the identity of Mrs. Cataldo and for the decision to call her before the grand jury. *Cf. Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Indeed, the record supports the testimony of Mr. Valenti at the Kastigar hearing that Ms. Cataldo was never viewed as a potential prosecution witness. On the contrary, she was called before the grand jury only to "freeze" her testimony in the event she testified as a defense witness at trial. Tr. 77–78, April 13, 1989. She did no more before the grand jury than authenticate documents which, with one

the defendant does argue that these tests have not been met, his inability to substantiate most of his claims of misuse,[11] combined with the compelling untainted evidence before the grand jury, has forced him to argue that the indictment must be dismissed if any tainted evidence was heard by the grand jury.[12] This argument, which

exception, were authenticated by other grand jury witnesses and, without exception, were authenticated by other witnesses at trial. Tr. 53–56, May 30, 1989.

> The defendant also argues that the United States Attorney failed to segregate the transcripts of the defendant's grand jury testimony from those of other witnesses and that there is a possibility that his grand jury transcripts were left with the indicting grand jury and may have been read by the grand jury. I credit the testimony of Assistant United States Attorney Nicholas DeFeis that he segregated the transcripts of the defendant's testimony sometime prior to the return of the first indictment when he was apprised by the defendant's attorney that a motion would be made to dismiss any indictment because of the misuse of the defendant's immunized testimony.

**12.** The only support for the defendant's claim of misuse is found in an answer to a leading question put to Mr. Valenti when he testified before the grand jury on the fraud charge relating to the Chemical Bank. Specifically, Mr. Valenti responded affirmatively when asked if he had determined that the net worth statements the defendant submitted to the Chemical Bank was false by "examin[ing] them in light of the documents and papers" he retrieved "either from Mr. Rivieccio personally as a result of grand jury subpoenas, or other means, and the documents that were seized with search warrants at the Hyfin Credit Union." Tr. 10, April 14, 1988. The question addressed to Mr. Valenti, which inaccurately assumed that he "retrieved" documents personally from the defendant, was preceded by the following statement to the grand jury by the prosecutor:

> I am not going to ask him to identify any documents today, but he will be able to present some documents to you. He will be able to answer questions specifically, if you want to know about the source of various information, but today, as I said, it's just going to be a general overview. So when we start to present witnesses who can only testify about a small part of the case, you will be able to understand where that small part fits in.

Tr. 4, April 14, 1988.

> Under these circumstances, it is unlikely that the grand jury paid the slightest attention to the reference to the defendant as the source of certain documents when it voted an indictment some three weeks later. Moreover, it is

is contrary to prevailing cases in the Second Circuit, *see, e.g., United States v. Myers*, 635 F.2d at 941; *United States v. James*, 493 F.2d at 326; *United States v. Colasurdo*, 453 F.2d at 596, has been rejected as a basis for upsetting a judgement of conviction. As Judge Winter wrote in *United States v. Gallo:*

> Such a rule would vitiate the function of the harmless error rule. While it is of utmost importance that the government respect and scrupulously observe restrictions on the use of immunized testimony, I see no reason to set aside an otherwise valid conviction because of an error that had no effect on the course of events.

859 F.2d at 1084; *see United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

The alleged misuse of the defendant's testimony here likewise had no significant effect on the course of events. While the defendant alleges that some of the evidence heard by the grand jury that indicted him derived from his compelled testimony, he is "in substantially the same position" that he would have been in had he not testified. *Kastigar*, 4'6 U.S. at 462, 92 S.Ct. at 1665. The United States Attorney established "that all of the evidence" admitted against the defendant at trial "was derived from legitimate independent sources." *Id.* We know from the overwhelming and untainted evidence at trial that, had the defendant not testified, the United States Attorney would have been able to produce ample evidence to warrant an indictment. Carelessness, rather than necessity, resulted in the alleged misuse of his compelled testimony before the grand jury. The dismissal of the indictment, which will only occasion the return of another indictment, does not make sense as a matter of policy and is not required as a matter of law.

inconceivable that the grand jury's action would have been any different if, instead of referring to the defendant as the source of the documents, Mr. Valenti had simply said he

Accordingly, for the foregoing reasons, the motion to dismiss the indictment is denied.

SO ORDERED.

obtained them from the various corporate entities. *See Braswell v. United States* , 487 U.S. 99, 108 S.Ct. 2284, 2295, 101 L.Ed.2d 98 (1988).