**UNITED STATES of America,**
**Appellant,**

v.

**Dominic MARIANI, Appellee.**

**No. 571, Docket 87–1394.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 19, 1988.

Decided July 11, 1988.

Frank J. Marine, Atty., U.S. Dept. of Justice, Washington, D.C. (Andrew J. Malo-

ney, U.S. Atty. E.D. New York, Edward A. McDonald, Attorney-in-Charge, U.S. Dept. of Justice, Organized Crime Strike Force, E.D. New York, Mario Dinatale, Laura A. Brevetti, Alan M. Friedman, Sp. Attys., U.S. Dept. of Justice, Brooklyn, N.Y., of counsel), for appellant.

Judd Burstein, New York City (Gerald L. Shargel, New York City, of counsel), for appellee.

Before LUMBARD, KEARSE, and PIERCE, Circuit Judges.

LUMBARD, Circuit Judge:

The government appeals from an order of Judge Sifton of the Eastern District of New York which vacated Dominic Mariani's convictions for conspiring to participate in the affairs of an enterprise through a pattern of racketeering (18 U.S.C. § 1962(d)), conspiring to commit extortion (18 U.S.C. § 1951), making illegal payments to a union representative (29 U.S.C. § 186(a)(2)), and making illegal payments to influence the operation of an employee benefit plan (18 U.S.C. § 1954). The court dismissed the indictment against Mariani on the ground that the government improperly used testimony Mariani had given to a grand jury under a grant of immunity in order to obtain his conviction. Finding that Mariani's indictment and conviction were based on evidence wholly independent of his immunized testimony, we reverse the order of the district court and reinstate Mariani's conviction and sentence.

The record shows that the government made no use of Mariani's immunized testimony in presenting its case at Mariani's trial. Nor did the government make any impermissible non-evidentiary use of Maria-

ni's immunized testimony. Our conclusion and the reasons therefor require us to set forth at some length the steps in the government's investigation of Teamsters Local 814 which began in 1982.

### I.

After a lengthy investigation by the government, the grand jury returned Indictment 85-CR-00354 (the "1985 Indictment") on June 10, 1985 charging Philip Rastelli and 16 others with participation in a RICO conspiracy consisting of various trucking companies and members of organized crime to corrupt Teamsters Union Local 814.[1] Although not then indicted on the conspiracy charges, Mariani was charged in counts 54 and 55 of this indictment with making false material declarations before the grand jury on August 23, 1984, and with obstruction of justice (in violation of 18 U.S.C. §§ 1623(a), 1503). Those charges were based on Mariani's allegedly false testimony in regard to his role as a co-conspirator as the owner of Washington Moving and Storage Company and later as a principal of Guardian Worldwide Transport, as well as his status as a beneficiary of the conspiracy resulting from his participation in bid-rigging of government moving contracts, unlawful payments with respect to employee benefit funds and various Taft-Hartley law violations. The conviction of Mariani on counts 54 and 55 of this 1985 Indictment is not at issue in this appeal, but the investigation leading to that 1985 Indictment is relevant to our inquiry concerning the basis for his later indictment for RICO conspiracy and other charges.[2]

---

1. Defendants Philip Rastelli, Nicholas Marangello, Joseph Massino, Carmine Rastelli, James Bracco, Charles Martelli, Charles Agar, Anthony Cantatore, Frank Muli and Warren Weissman were convicted of charges made in the 1985 Indictment. All have filed notices of appeal in this court but Muli has withdrawn his appeal. *United States v. Rastelli, et al.,* C.A. Nos. 87-1057/1065, 87-1097/98. Defendant John Scordato died prior to trial. A mistrial was declared with respect to defendant Joseph Schwartz because of illness and his case was severed. Defendant Anthony Ficarotta pleaded guilty to

count 1. John Konovitch pleaded guilty to count 56. Charles Rosenberg pleaded guilty to count 58. Philip Goldstein was acquitted on all counts.

2. Mariani's appeal from his conviction on the false statement and obstruction charges made by the 1985 Indictment is pending along with the appeal of Mariani's co-defendants who were convicted at trial with Mariani. *United States v. Rastelli, et al.,* C.A. Nos. 87-1057/1065, 87-1097/98.

In January 1986, as a result of additional evidence developed by the government, Mariani was charged in Indictment 86–CR–0015 (the "1986 Indictment") with four offenses, including the RICO conspiracy already charged against Rastelli and his co-defendants in the 1985 Indictment.

After the district court consolidated the two indictments for trial, Mariani petitioned the court to conduct a hearing, pursuant to *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), to determine whether the proceedings leading to, and the trial based upon, the 1986 Indictment were or would be tainted by his prior immunized testimony. On February 21, 1986, the district court ruled that such a hearing would be conducted after the trial.

Following a six-month trial of Mariani and his co-defendants charged in the 1985 Indictment, Mariani was convicted by a jury of the four counts charged in the 1986 Indictment and the false statement and obstruction of justice charges made in the 1985 Indictment. On February 10, 1987, the district court sentenced Mariani to a total of one year imprisonment on the false statement and obstruction charges, to be served consecutively with four one year consecutive terms on the four counts of the racketeering conspiracy. He was also fined $15,000 and ordered to forfeit $5,000 to the United States.

At the *Kastigar* hearing, held on July 9, and 14, 1987, the government called Laura Brevetti, Assistant Attorney-in-Charge of the Brooklyn Strike Force, Alan Friedman, Special Attorney with the Strike Force, and Special Agent David Stone of the FBI, all of whom were involved in the investigation of the conspiracy at issue in this appeal. The court received transcripts of Mariani's non-immunized grand jury testimony of September 12, 1983, his immunized grand jury testimony of August 23, 1984, portions of the government's prosecutive memorandum dated July 9, 1985, and subpoenas dated June 11, May 2, and August 27, 1985 calling for the production of documents from Mariani's moving companies. The court also heard evidence concerning the roles of two government witnesses, Anthony Giliberti and Warren Wagner, in the government's investigation of Mariani's role in the RICO conspiracy.

*Mariani's Grand Jury Testimony on September 12, 1983*

Mariani was first called before the grand jury on September 12, 1983. He testified, without claiming immunity, that he was an employee of Guardian Worldwide Movers, a company owned by his son, since 1981. He previously had been a part owner and employee of Washington Movers since 1952, which was no longer in business. Washington Movers' employees were represented by Local 814 and Mariani was a member of Local 814. Washington Movers had non-union as well as union employees. Mariani testified that he knew Anthony Giliberti, Local 814's delegate for Washington Movers, and Earl Coralluzo, Local 814's business agent. He had "no such recollection" whether he paid Coralluzo for preferential treatment from Local 814.

Mariani, asserting his privilege against self-incrimination, refused to answer various questions, including the following: whether he knew an organized crime figure named Jimmy Rotondo, whether Washington Movers paid five percent of certain contracts to Local 814, whether he was responsible for $1,000 a month being paid to Local 814 from Guardian Movers, whether he gave money to Anthony Cantatore or Jimmy Rotondo, and whether Washington Movers bought approximately forty Local 814 union membership books for $4,000.

*Mariani's Grand Jury Testimony on August 23, 1984*

On August 23, 1984, Mariani testified again before the same grand jury pursuant to a grant of immunity under 18 U.S.C. § 6002. He testified that he was part owner and president of Guardian Transport Company, Inc./Worldwide Moving. Previously, Mariani worked for his father's company, Washington Moving and Storage Company which was in existence from 1915 to 1981. Both companies' employees were represented by Local 814. Mariani's companies used non-union labor, were delinquent in paying their obligations to Local

814's Welfare and Pension Funds, and were not subjected to a strike by Local 814 that affected the other moving companies.

Mariani also testified that he had known Anthony Giliberti and Earl Coralluzo since the early 1970's and that they were business agents for Local 814. He knew Jimmy Rotondo, James Bracco, president of Local 814, and Charles Martelli, secretary-treasurer of Local 814. Mariani testified that he never discussed with Giliberti, Coralluzo, Bracco, Martelli, or Rotondo or anyone else making payments to them or to other representatives of Local 814, and he never made payoffs to them or to any other official of Local 814, or anyone else in order to do business or for benefits. Mariani added that he had no personal knowledge of anyone making payoffs to Local 814 on behalf of Washington Movers or Guardian Movers. He testified that he never negotiated a payment and never made a payment to Local 814 representatives to reduce the debt of his companies to Local 814's Pension and Welfare Funds.

*Giliberti's Testimony*

The *Kastigar* hearing showed that, in July 1982, Anthony Giliberti, at trial a key witness against Mariani and his co-defendants, entered into the Witness Protection Program. Giliberti became an organizer for Local 814 in 1970 and its vice-president in 1979. He disclosed a long-standing criminal enterprise composed of officials of Local 814 of the Teamsters Union and of its pension and welfare funds, representatives of organized crime, and executives in the moving and storage industry. Prior to Mariani's first appearance before the grand jury, Giliberti told prosecutors that Mariani owned or operated Washington Moving & Storage and Guardian Worldwide Movers, which performed commercial and government moving contracts. He also said that Mariani agreed to make payoffs to officials of Local 814 amounting to five percent of the gross receipts of contracts made by his companies and to Jimmy Rotondo. As a consequence of this payoff scheme, Giliberti said that Mariani was permitted to use non-union labor and to remain delinquent in his payments to the union pension and welfare funds. Finally, he told the government that Rotondo interceded with the union on Mariani's behalf during 1974. Although Giliberti was not aware of either the precise nature or the purposes of the payoffs or of this five percent scheme, the government later learned the details of both from Warren Wagner in mid-December 1984.

*Wagner's Testimony*

Warren Wagner first became available to the Brooklyn Organized Crime Strike Force in December 1984, through the United States Attorney for the Southern District, after pleading guilty to federal tax violations in the Southern District.

Wagner was the president of Wagner Moving & Storage, a large New York City commercial mover. Wagner Moving was a family owned business of which Wagner became chief executive late in 1974. By 1978, approximately ninety percent of the firm's business involved federal, state and local agencies. Wagner Moving's major competitors were Mariani's two moving companies and two other firms (Deluxe Van Lines and Schwartz Moving and Trucking) which were referred to in the 1985 Indictment. Wagner told the government that periodically between 1970 and 1978, he and Mariani joined with officers of the two other firms in bid-rigging combinations that were the forerunners to the 1978–82 "five percent club" conspiracy described in the 1986 Indictment.

Giliberti's evidence first indicated Mariani's involvement in the conspiracy. It was Wagner's disclosures, in December 1984, however, which greatly strengthened the government's case by supplying the details of Mariani's involvement in the bid-rigging and payoff schemes. With the evidence given by Wagner, Brevetti and Friedman decided to press racketeering charges against Mariani. In July 1985, the Attorney General authorized the government prosecutors to present evidence to a new grand jury of Mariani's participation in the substantive crimes already charged against Rastelli and his co-defendants. In January 1986, that grand jury indicted Mariani for

participation in the same racketeering conspiracy.

*The District Court's Findings*

On August 8, 1987, based upon the *Kastigar* hearing, Judge Sifton found that the government had impermissibly used Mariani's immunized testimony. The court vacated Mariani's conviction and dismissed the 1986 Indictment against him. The court did not disturb Mariani's conviction for making false statements to the grand jury and obstruction of justice charged in the 1985 Indictment.

According to the district court, 18 U.S.C. § 6002 was "designed to leave the witness who is compelled to testify in substantially the same position as if the witness had not testified" and remained silent, and accordingly, "places a 'total prohibition' on the use of immunized testimony against a witness" in *"any respect"*. (Emphasis in district court opinion.) Thus, the court ruled that 18 U.S.C. § 6002 proscribes non-evidentiary uses of immunized testimony. *See generally Pillsbury Co. v. Conboy*, 459 U.S. 248, 255, 103 S.Ct. 608, 613, 74 L.Ed.2d 430 (1983); *Kastigar*, 406 U.S. at 453, 462, 92 S.Ct. at 1665.

The district court found that the prosecutors had impermissibly used Mariani's immunized testimony in three non-evidentiary respects. First, Mariani's immunized admissions that he knew Jimmy Rotondo, and that Mariani's companies used non-union labor, underpaid their obligations to the Welfare and Pension Funds and had never been the subject of a strike, corroborated the testimony of government witnesses Giliberti and Wagner about these matters.

Second, Mariani's relationship with Rotondo, an organized crime figure, was an important factor indicating that "Mariani had knowledge of the RICO enterprise's scope and organized crime component." In that regard, the court found that even if Mariani's immunized testimony about his knowing Rotondo did not induce the prosecutors to obtain an indictment on RICO charges against Mariani, "the government's use of confirmatory information nevertheless violates the use immunity statute."

Finally, the district court concluded that "Friedman … made no effort to prepare to cross-examine Mariani because he believed, from examining the minutes of Mariani's grand jury testimony that Mariani would not testify in his own defense." The court also noted that the government knew that, having admitted before the grand jury during his immunized testimony that he knew Rotondo, Mariani would not testify at trial.

## II.

The evidence given by Giliberti (which became available to the government before Mariani gave his immunized testimony to the grand jury on August 23, 1984) and Wagner was quite sufficient to indict Mariani and convict him of racketeering conspiracy.

The statute under which Mariani was directed to testify, 18 U.S.C. § 6002, clearly prohibits evidentiary direct or indirect use of the witness's testimony. *See Kastigar v. United States*, 406 U.S. at 453, 92 S.Ct. at 1661. Title 18 U.S.C. § 6002 provides in pertinent part:

> [N]o testimony or other information compelled under the [immunity] order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

The statute does not provide that a witness may never be prosecuted for any illegal participation in the matters about which he gives testimony. It is well established that such a witness may be prosecuted for such illegal acts if the prosecution is based solely on evidence obtained from independent sources. *Kastigar*, 406 U.S. at 460–61, 92 S.Ct. at 1664–65.

■ Where a witness is later prosecuted for an offense which was the subject of his testimony given under immunity, it is recognized that the government bears a heavy burden to show that the evidence it uses in the subsequent prosecution was not de-

rived directly or indirectly from the witness's immunized testimony. To sustain this burden, we have held that the government must prove that it "relied solely on evidence from legitimate independent sources." *In re Corrugated Container Antitrust Litigation,* 644 F.2d 70, 76 (2d Cir.1981) (citing *Kastigar v. United States,* 406 U.S. at 460, 92 S.Ct. at 1664); *see United States v. Catalano,* 491 F.2d 268, 272 (2d Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974).

In *Catalano,* the defendants were found guilty of conspiring to evade income taxes and one of the defendants was found guilty of evading income taxes and filing a false return. Prior to his indictment, one defendant had appeared before a county grand jury under a grant of immunity regarding events relating to the matters with which he was charged. Finding that the government had met its burden of demonstrating that it had information related to the charges it ultimately brought against the defendant prior to the indictment and that the evidence introduced at trial was derived from sources independent of the defendant's immunized testimony, we held that the district court had properly denied the defendant's motion to dismiss the indictment against him. *Catalano,* 491 F.2d 272.

[T]he prosecutor here established that he had prior knowledge of substantially all the information covered in the [defendant's] testimony, thus foreclosing the possibility that he made "any use, direct or indirect, of the compelled testimony and any information derived therefrom [in violation of 18 U.S.C. § 6002]".

*Id.* (quoting *Kastigar v. United States,* 406 U.S. at 460, 92 S.Ct. at 1664); *see also United States v. Bianco,* 534 F.2d 501, 510–11 & n. 14 (2d Cir.) (the government was not barred from prosecuting defendant because it was able to demonstrate that it already knew everything relevant to its case prior to the defendant's immunized testimony before a state grand jury), *cert. denied,* 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed. 2d 84 (1976). *Cf. United States v. McDaniel,* 482 F.2d 305, 311 (8th Cir.1973); *United States v. Semkiw,* 712 F.2d 891, 894–95 (3rd Cir.1983).

In *McDaniel,* the government's trial counsel read three volumes of testimony given by McDaniel to a state grand jury. The counsel was unaware that under North Dakota law, a grand jury witness is automatically granted immunity when he testifies. The court found that the government failed to meet its burden of demonstrating an independent source of the evidence adduced at the defendant's trial. The court reasoned that the government did not adequately show that the prosecutor had not used the immunized testimony "in some significant way short of introducing tainted evidence." *McDaniel,* 482 F.2d at 311. The court went further and suggested possible ways in which the Assistant United States Attorney may have used the testimony impermissibly:

> Such use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy.

*Id.*

■ To the extent that *McDaniel* can be read to foreclose the prosecution of an immunized witness where his immunized testimony might have tangentially influenced the prosecutor's thought processes in preparing the indictment and preparing for trial, we decline to follow that reasoning.

■ The government has proven that the evidence used at Mariani's trial was derived from sources entirely independent of any immunized testimony given by Mariani. Not only was no direct use made of the immunized testimony; no indirect use was made of that testimony. Anthony Giliberti's testimony about Mariani's participation in the conspiracy was given to the government in July 1982. Warren Wagner became a government witness in December, 1984, only after he had pleaded guilty to a tax fraud charge in the Southern District. Mariani's immunized testimony given in August 1984 had made no mention of Wagner.

In view of the government's convincing proof that the evidence upon which it based its prosecution of Mariani came from legitimate independent sources, we cannot see how the government prosecutors' knowledge of Mariani's immunized testimony could be considered impermissible use of that testimony.

The district court made three specific findings of impermissible non-evidentiary use of Mariani's immunized testimony by the government. We believe the record establishes that these findings were either unjustified or that the "uses" at issue were wholly conjectural and insubstantial.

First, the district court found that Mariani's admissions that he knew Rotondo, that his companies used non-union labor and underpaid fund obligations, corroborated the testimony of Giliberti and Wagner. The short answer is that the government simply did not use Mariani's admissions; nor did it have any need to do so. Giliberti's and Wagner's testimony showed Mariani's dealings with Rotondo and formed more than a sufficient basis for the prosecutors to have brought the 1986 Indictment against Mariani, and for the jury to convict.

Second, the district court found that Mariani's immunized testimony about his relationship with Rotondo was an indication of Mariani's knowledge of the workings of the conspiracy. Here again, the trial evidence of this came not from Mariani's testimony but from Giliberti and Wagner. Mariani's admissions were in no sense used to corroborate Giliberti and Wagner. Their testimony needed no corroboration by Mariani to justify the government's prosecution.

■ Finally, the district court held that knowledge of Mariani's immunized testimony was an impermissible use because the prosecutor made no effort to prepare to cross-examine Mariani because he knew from Mariani's immunized testimony that it was unlikely that Mariani would take the stand. We do not see how the prosecutor's judgment that Mariani would not take the stand can be considered a use of the immunized testimony. The failure to prepare any cross-examination of Mariani could not have strengthened the government's case. Mariani himself, by his false testimony at his first appearance before the grand jury, had created the situation which made it virtually certain that he would not take the stand.

Were these supposed non-evidentiary uses of Mariani's immunized testimony found to be so impermissible that they barred prosecution thereafter for the matters covered by the witness, it would be impossible ever to prosecute a witness for such matters, once the witness has given immunized testimony. The statute and the case law demonstrate that it was not the intention of Congress, nor is it the command of the Constitution, to give any witness such broad and complete immunity.

Mariani has not been unfairly or improperly treated by being subjected to prosecution for his part in the conspiracy. His dilemma and convictions are the result of his choosing to deny, under oath, any knowledge or any part in the conspiracy. Instead of invoking the Fifth Amendment and refusing to answer certain questions, or telling the truth when sworn before the grand jury, he elected to deceive and obstruct. He thus ran the risk that others would tell the story and implicate him. Giliberti and Wagner did tell the story of Mariani's involvement in the conspiracy. The government was not barred from using their testimony. The conviction based on their testimony should stand.

Reversed and remanded for reinstatement of the convictions and the sentence.