UNITED STATES of America, Appellee,

v.

Bartholomew RIVIECCIO,
Defendant–Appellant.

No. 1639, Docket 89–1581.

United States Court of Appeals,
Second Circuit.

Argued Aug. 17, 1990.

Decided Nov. 2, 1990.

John N. Cuomo, New Hyde Park, N.Y., for defendant-appellant.

Nicholas M. Defeis, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. E.D. New York, Matthew E. Fishbein, Peter A. Norling, Asst. U.S. Attys., of counsel), for appellee.

Before MINER and ALTIMARI, Circuit Judges, and KELLEHER, District Judge.[*]

KELLEHER, District Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York. A jury convicted Defendant–Appellant Bartholomew Rivieccio ("Appellant") of one count of conspiracy to commit mail fraud (18 U.S.C. § 371), ten counts of mail fraud (18 U.S.C. § 1341), nine counts of bribery of bank officials (18 U.S.C. § 215), one count of misapplication of credit union funds (18 U.S.C. § 657), and one count of bank fraud (18 U.S.C. § 1344). The district court sentenced him to concurrent five-year terms on each count, payment of restitution, and a special assessment.

On appeal, Appellant claims that the district court erred in failing to dismiss the indictment, arguing that the Government improperly used his immunized testimony, both directly and indirectly, before the Grand Jury that indicted him and at trial. We affirm.

I

Appellant's conviction stems from his role in a scheme to defraud the HYFIN (Help Your Friend in Need) Credit Union ("Credit Union") and Chemical Bank, taking place from 1981 to April 1986. In summary, Appellant fraudulently induced the Credit Union and Chemical Bank into financing the purchase and rehabilitation of buildings located primarily in Brooklyn.

In April 1986, Arnold Kramer, an employee of the Credit Union, began cooperating with Government attorneys in exchange for a no-prosecution agreement. Kramer revealed a scheme in which Appellant's real estate corporations obtained loans from the Credit Union with the assistance of some Credit Union officers. The loans were improper for a variety of reasons. They were unsecured and obtained for the benefit of Appellant's real estate corporations. Under New York banking law, corporations are not entitled to receive loans from credit unions. In addition, the loans exceeded the Credit Union's lending limits and were completed without the necessary paperwork. To obtain the loans, Appellant bribed some Credit Union officers by giving them shares in the corporations holding properties he had purchased.

After Appellant became so deeply in debt that the Credit Union would no longer lend him money, he applied for and received loans from Chemical Bank without disclosing that he owed several million dollars to the Credit Union.

Pursuant to the information furnished by Kramer, agents of the New York State Banking Department and the United States Attorney's office obtained and executed search warrants for the Credit Union's and Appellant's offices in April 1986. The searches resulted in the seizure of numerous documents and records.

Within weeks, Appellant's accomplices in the scheme agreed to plead guilty to assorted charges arising out of the scheme and to cooperate in the investigation. As part of those plea agreements, the accomplices agreed to be debriefed and to testify at subsequent proceedings.

In June 1987, Appellant's attorneys produced materials subpoenaed by a Grand Jury investigating the financial affairs of the Credit Union. Thereafter, Appellant testified before the Grand Jury on July 2, July 9, and September 10, 1987 after being granted use immunity under 18 U.S.C.

[*] Honorable Robert J. Kelleher, of the United States District Court for the Central District of California, sitting by designation.

§ 6002.[1]

The ostensible purpose of Appellant's Grand Jury appearance was to authenticate the documents produced by his attorneys in response to the Grand Jury subpoenas. However, the scope of the questioning extended beyond the mere authentication of records. Specifically, Appellant answered questions pertaining to, *inter alia,* the preparation of the documents, the ownership and operation of the real estate corporations, and the identity of his associates in the project, including that of his accountant, Ralph Strafaci.

On February 1, 1988, a new Grand Jury was impanelled. On May 5, 1988, the new Grand Jury returned an indictment against Appellant. Superseding indictments followed on July 21 and November 3, 1988, the latter being the charge upon which Appellant stood trial. The Government did not present the Grand Jury that indicted Appellant with any of the transcripts of Appellant's immunized testimony before the 1987 Grand Jury.

Before his trial commenced, Appellant moved to dismiss the superseding indictment on the ground that the Government used his immunized testimony against him. The district court deferred the hearing on the motion until after trial.

The testimony of Appellant's former accomplices and numerous documents established the Government's case against Appellant. Appellant rested without putting on a defense.

Following the trial, the district court conducted a hearing pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), to determine whether the Government used Appellant's immunized testimony, either directly or indirectly, to procure the indictment and subsequent conviction. The district court concluded that the Government had met its burden of demonstrating that the information used to indict Appellant and the evidence admitted at trial were obtained through legitimate independent sources.

Accordingly, the district court denied Appellant's motion. *United States v. Rivieccio,* 723 F.Supp. 867 (E.D.N.Y.1989). The denial of this motion is the subject of this appeal.

## II

The question presented in this appeal is whether the district court erred in denying Appellant's motion to dismiss the indictment. We think not, and for the reasons set forth below, we affirm the judgment of the district court.

## III

Appellant raised two issues in his motion to dismiss the indictment, both of which are presented in this appeal. Under *Kastigar,* a defendant "need only show that he or she testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence was derived from legitimate independent sources." 406 U.S. at 461–62, 92 S.Ct. at 1665–66.

Appellant claims that the Government made use of his immunized testimony both at trial and before the Grand Jury that returned his indictment. We address each of these claims in turn.

### A

■ The district court found that the Government had demonstrated an independent source for all the evidence introduced at trial. Whether the Government made use of immunized grand jury testimony is an issue of fact, and the district court's findings will not be reversed unless clearly erroneous. *United States v. Gallo,* 863 F.2d 185, 190 (2d Cir.1988), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989).

■ At the *Kastigar* hearing, the Appellant conceded that all of the evidence presented at trial was derived from independent legitimate sources except for the

---

**1.** Section 6002 provides in relevant part that "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case...." 18 U.S.C. § 6002 (1988).

testimony of Ralph Strafaci, Appellant's accountant. With respect to Strafaci's testimony, Appellant contends that the Government learned or confirmed the identity of Strafaci as a result of Appellant's immunized testimony. Appellant concedes that the Government was aware of Strafaci's name and profession prior to his immunized testimony but argues instead that the immunized testimony caused the Government to focus on Strafaci. We disagree.

It is uncontroverted that the Government learned about Strafaci long before Appellant's Grand Jury testimony. Strafaci was present at Appellant's office when the Government executed the April 1986 search warrant. At that time, Anthony Valenti, a criminal investigator for the United States Attorney's office, was told by Strafaci that he was the accountant for Appellant's corporations. Valenti gave Strafaci a card and told him that he should have a lawyer call him. Shortly thereafter, Strafaci's lawyer contacted Valenti.

In addition, during a January 1987 court appearance (six months prior to Appellant's first Grand Jury appearance), the Government referred to Strafaci as Appellant's accountant and indicated that Strafaci had turned documents over to Appellant's attorneys at Appellant's direction. Finally, Strafaci's name appears on various documents produced by Appellant prior to his immunized testimony in response to the Grand Jury subpoenas.

Hence, the Government was clearly aware of Strafaci and his possible involvement in or knowledge of the fraudulent scheme before he was identified during Appellant's Grand Jury testimony. The record thus supports the district court's finding that Strafaci's testimony at trial was derived from independent legitimate sources. This finding was not clearly erroneous; therefore, we cannot disturb the finding of the district court.

■ Appellant also contends that the Government made indirect use of his immunized testimony at trial. The gist of this argument is that the Government used Appellant's immunized testimony to (i) shape and focus the questioning of witnesses and (ii) ascertain Appellant's demeanor.[2]

Our analysis of Appellant's "indirect use" argument ends where it begins—with our holding in *United States v. Mariani*, 851 F.2d 595 (2d Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989). In *Mariani*, we declined to follow the reasoning utilized in other circuits that would "foreclose the prosecution of an immunized witness where his immunized testimony might have tangentially influenced the prosecutor's thought processes in preparing the indictment and preparing for trial." *Id.* at 600.[3]

As the district court recognized, our holding in *Mariani* controls and is dispositive here. To the extent the Government's thought process or questioning of witnesses may have been influenced by Appellant's immunized testimony, we hold that any such use was merely tangential and was therefore not a prohibited use.

■ As for Appellant's claim that his immunized testimony served to expose his "wiseguy" demeanor under questioning, Appellant did not testify at trial; thus, his demeanor was never put in issue. Even if

**2.** Appellant claims that Government investigator Valenti asked the Assistant United States Attorney ("AUSA") who examined Appellant before the Grand Jury how he reacted to questioning, how many times he left the room to speak with his attorney, and the like. Evidently, the AUSA told Valenti that Appellant came across as a "wiseguy."

**3.** The reasoning we rejected in *Mariani* had its genesis in *United States v. McDaniel*, 482 F.2d 305 (8th Cir.1973). In *McDaniel*, the Eighth Circuit suggested that it would be impermissible for an AUSA to use immunized testimony "in some significant way short of introducing tainted evidence. Such use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy." *Id.* at 311 (citations omitted). At least one other circuit has adopted this reasoning. *See United States v. Semkiw*, 712 F.2d 891, 895 (3d Cir.1983).

We recognize that *Mariani* is in conflict with some of our sister circuits. Nevertheless, *Mariani* is the law of this circuit, and we decline to accept Appellant's invitation that we reconsider the position we took in *Mariani*.

the Government assumed that Appellant would not testify at trial (based on Appellant's "wiseguy" demeanor before the Grand Jury), such judgments cannot be considered a "use" of Appellant's immunized Grand Jury testimony. *Mariani*, 851 F.2d at 601.

We conclude that the district court properly rejected Appellant's claim that the Government made use of his immunized testimony at trial. The record supports the district court's finding that the Government demonstrated an independent source for all the evidence introduced at trial, and our decision in *Mariani* forecloses Appellant's claim that the Government made indirect use of his immunized testimony.

### B

■ We now turn to Appellant's claim that the indictment was tainted by the Government's use of his immunized testimony. We need not examine the specifics of Appellant's allegations of misuse. Even if we assume, for the sake of argument, that the Government did misuse Appellant's immunized testimony, he would not be entitled to a dismissal of the indictment.

It is fundamental in our system of criminal justice that "an indictment returned by a properly constituted grand jury is not subject to challenge on the ground that it was based on unconstitutionally obtained evidence." *United States v. Washington*, 431 U.S. 181, 185 n. 3, 97 S.Ct. 1814, 1818 n. 3, 52 L.Ed.2d 238 (1977) "(citations omitted)". The Supreme Court has consistently recognized this rule as applying to claims that an indictment was based on evidence obtained in violation of the privilege against self-incrimination. *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, 109 S.Ct. 1494, 1499, 103 L.Ed.2d 879 (1989); *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d

561 (1974); *Gelbard v. United States*, 408 U.S. 41, 60, 92 S.Ct. 2357, 2367, 33 L.Ed.2d 179 (1972); *United States v. Blue*, 384 U.S. 251, 255 n. 3, 86 S.Ct. 1416, 1419 n. 3, 16 L.Ed.2d 510 (1966); *Lawn v. United States*, 355 U.S. 339, 350, 78 S.Ct. 311, 318, 2 L.Ed.2d 321 (1958). The rule has also been applied by the Second Circuit. *See United States v. James*, 493 F.2d 323, 326 (2d Cir.), *cert. denied*, 419 U.S. 849, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974).

Neither the enactment of 18 U.S.C. § 6001 *et seq.* nor *Kastigar* have altered the effect of this rule. We agree with Judge Van Graafeiland's conclusion that the legislative history of 18 U.S.C. §§ 6002 and 6003 shows that "Congress did not intend that a violation of those sections would result in a *per se* constitutional injury requiring dismissal of the indictment." *United States v. Gallo*, 859 F.2d 1078, 1090 (2d Cir.1988) (Van Graafeiland, J. concurring), *cert. denied sub nom. Miron v. United States*, 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989).

■ Because "[t]he real evil aimed at by the Fifth Amendment's flat prohibition against the compulsion of self-incriminatory testimony was that thought to inhere in using a man's compelled testimony to punish him," *Feldman v. United States*, 322 U.S. 487, 500, 64 S.Ct. 1082, 1088, 88 L.Ed. 1408 (1943) (Black, *J.*, dissenting), we believe that a violation of either the privilege against self-incrimination or 18 U.S.C. § 6002 requires only the suppression at trial of a defendant's compelled testimony. Accordingly, when the Government violates 18 U.S.C. § 6002 by using immunized testimony before a grand jury, generally the remedy for the violation is the suppression of the tainted evidence at trial, not a dismissal of the indictment.[4]

■ Since, in this case, the appropriate remedy for the use of immunized testimony before a grand jury is the suppression of

---

**4.** Our holding on this score is not intended to alter in any fashion the two narrow exceptions to the general rule that facially valid indictments may not be challenged by allegations that the grand jury heard immunized testimony or otherwise tainted evidence. One exception we have applied is when the defendant testifies under immunity before the same grand jury returning the indictment or when the immunized testimony is placed before the indicting

grand jury. In such cases, we have held that the indictment must be dismissed. *See, e.g., United States v. Tantalo*, 680 F.2d 903, 909 (2d Cir. 1982); *United States v. Hinton*, 543 F.2d 1002, 1010 (2d Cir.1976). The other exception we have recognized is when the government concedes that the indictment rests almost exclusively on tainted evidence. In that situation, we have held that a dismissal of the indictment is

the tainted evidence at trial, the district court properly denied Appellant's motion to dismiss the indictment. As discussed more fully above, the Government did not use, either directly or indirectly, any of Appellant's immunized testimony at trial. Consequently, because there was no use of any immunized testimony at trial (and therefore no tainted evidence that was subject to suppression), any misuse of the immunized testimony which may have occurred before the indicting Grand Jury was rendered harmless. As Judge Winter observed for the majority in *United States v. Gallo*, 859 F.2d at 1084, "[w]hile it is of utmost importance that the government respect and scrupulously observe restrictions on the use of immunized testimony, I see no reason to set aside an otherwise valid conviction because of an error that had no effect on the course of events." In other words, no harm, no foul.[5]

### IV

The district court did not err in denying Appellant's motion to dismiss the indictment. The Government did not use, direct-

ly or indirectly, Appellant's immunized testimony at trial. Even assuming that the Government did misuse the immunized testimony before the Grand Jury, Appellant was not entitled to have the indictment dismissed.

Judgment affirmed.

---

not an abuse of discretion. *See United States v. Tane*, 329 F.2d 848, 854 (2d Cir.1964).

Neither of these exceptions apply to the instant appeal. The Grand Jury that heard Appellant's immunized testimony was *not* the same Grand Jury that indicted Appellant, and there is nothing in the record which suggests that his testimony was placed before the indicting Grand Jury. Moreover, the Government has not conceded (nor has Appellant alleged) that the indictment rested almost exclusively on tainted evidence. This is not surprising, as the record would not support such a concession or allegation.

**5.** As an alternative basis for its denial of Appellant's motion to dismiss the indictment, the district court concluded that in light of the petit jury's guilty verdicts, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt. This conclusion was based on the Supreme Court decision in *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). In *Mechanik*, the Court addressed the issue of whether a judgment of conviction should be reversed because two witnesses testified in tandem before the grand jury in violation of Federal Rule of Criminal Procedure 6(d). The Court recognized that Rule 6(d) "protects against the danger that a defendant will be required to defend against a charge for which there is no

probable cause to believe him guilty," and that violations of Rule 6(d) "had the theoretical potential to affect the grand jury's determination whether to indict these particular defendants for the offenses with which they were charged." *Id.* at 70. However, the Court concluded:

> But the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Id.* "(footnotes omitted)."

The district court concluded that this reasoning was equally applicable to the instant case. Appellant takes issue with this conclusion and argues that the Supreme Court did not intend that its *Mechanik* decision be given such a broad scope. The Government contends that the *Mechanik* harmless error logic ought to be extended to cases such as the one at bar.

Since we conclude for other reasons that the district court did not err in denying Appellant's motion to dismiss the indictment on the grounds of alleged misuse of Appellant's immunized testimony before the Grand Jury, we need not and do not express any opinion as to how far the *Mechanik* rule extends. We leave that issue for another day.