**UNITED STATES of America, Appellee,**

v.

**Martin SCHWIMMER,**
**Defendant–Appellant.**

**No. 464, Docket 89–1106.**

United States Court of Appeals,
Second Circuit.

Submitted After Remand Sept. 24, 1990.

Decided Jan. 23, 1991.

Nathan Z. Dershowitz (Victoria B. Eiger, Dershowitz & Eiger, New York City, Alan M. Dershowitz, Cambridge, Mass., Daniel R. Williams, of counsel) for defendant-appellant.

Andrew J. Maloney, U.S. Atty. for the E.D.N.Y., New York City (Louis M. Fischer, Dept. of Justice, Washington, D.C., of counsel), for appellee.

Before MINER and ALTIMARI, Circuit Judges, and GRAY, District Judge.*

MINER, Circuit Judge:

Defendant-appellant Martin Schwimmer appeals from a judgment of conviction entered after a jury trial in the United States District Court for the Eastern District of New York (McLaughlin, *J.*). Schwimmer was convicted of conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(d) (1988), receipt of illegal payments to influence the operations of employee benefit plans, 18 U.S.C. § 1954 (1988), conspiracy to defraud the United States, 18 U.S.C. § 371 (1988), and income tax evasion, 26 U.S.C. § 7201 (1988). The offenses all relate to the receipt of commissions from a number of financial institutions for investing the funds of employee benefit plans in Certificates of Deposit issued by the institutions.

Schwimmer argues that his sixth amendment right to counsel was violated when the government intentionally obtained from his accountant information protected by the attorney-client privilege. He also contends that the district court erred in instructing the jury that, whether or not he was a formally-designated agent or counsel of the employee plans allegedly victimized, he was subject to the provisions of 18 U.S.C. § 1954 if his investment advice significantly influenced the investment decisions of

* Hon. William P. Gray, United States District Judge for the Central District of California, sitting by designation.

the plans. Schwimmer argues further that the trial court improperly instructed the jury that he was required to disclose his commissions to an employee benefit plan for which he acted in order to come within the "bona fide compensation" exception provided in 18 U.S.C. § 1954.

In *United States v. Schwimmer*, 892 F.2d 237 (2d Cir.1989) ("*Schwimmer I*"), we remanded for an evidentiary hearing on the attorney-client privilege issue. After that hearing, the district court found that no violation of the privilege had occurred because no use or derivative use of privileged information was made by the government.

We hold that, on the basis of the additional evidence adduced at the hearing, the district court correctly found that no violation of the attorney-client privilege warranting a reversal of Schwimmer's conviction had occurred. Regarding the challenge to the jury instructions, we hold that the district court did not misconstrue either the scope of 18 U.S.C. § 1954 or the statute's definition of "bona fide" compensation. Accordingly, we affirm the judgment.

## BACKGROUND

Familiarity with *Schwimmer I*, where we described in detail the investigation and conviction of Schwimmer, is presumed. Here, we recite only those facts relevant to this appeal, as well as additional facts established at the evidentiary hearing.

In *Schwimmer I*, we remanded Schwimmer's case to the district court for an evidentiary hearing because there was insufficient evidence in the record to determine whether the government had obtained information by invading the attorney-client privilege, and whether any information that might have been obtained was used to prepare the prosecution's case. We directed the court to determine whether the government's case was in any respect derived from a violation of the attorney-client privilege and, if so, to determine what use was made of the derivative information and whether that use affected a substantial

right of the appellant. *Schwimmer I*, 892 F.2d at 243–45.

On March 2 and 12, 1990, Judge McLaughlin conducted evidentiary hearings on the attorney-client privilege issue and found that no direct or indirect use of privileged information by the government had occurred.

Judge McLaughlin focused on meetings between Schwimmer's accountant and government representatives occurring on April 26, May 6, and August 18, 1988, and on copies of the accountant's workpapers that the government had obtained. The accountant, Ralph Glickman, had been hired by Schwimmer and his co-defendant, Mario Renda, to assist in the preparation of their defense, and the workpapers described the allocation between the two men of the commissions they received for investing the funds of employee benefit plans.

Based on the testimony of government agents Frank Devine and Eugene Brozen, the district court found that the information derived from the meetings of April 26 and May 6 was not used to prepare for the prosecution of Schwimmer. Rather, the meetings were conducted to determine a reasonable forfeiture amount for co-defendant Renda, who had pleaded guilty, and there was little, if any, reference to Schwimmer. Regarding the August 18 meeting, the district court heard uncontroverted testimony from Assistant United States Attorney ("AUSA") Bruce Maffeo that he had cautioned Glickman at the outset of the meeting not to disclose any information regarding conversations with Schwimmer, and that no inquiries into such confidential communications between Glickman and Schwimmer were made.

The court determined that there had been no derivative use of the information contained in the workpapers examined and copied at Glickman's office. Agent Brozen, who had retrieved the papers, testified that he had told AUSA Maffeo that the workpapers contained "nothing new" and that they never had discussed the matter again. Agent Devine, who along with Brozen was responsible for investigating the financial

aspects of the case, testified that he never was in possession of the workpapers and never had discussed them with Brozen. AUSA Maffeo testified that the first time he had looked at the workpapers was the day of the hearing on remand, and that, while preparing to prosecute Schwimmer, he had considered their acquisition a "non-event."

The district court also found that the workpapers had not been used by the prosecution either to prepare for cross-examination of witnesses or to gain an understanding of the strengths and weaknesses of its case so that evidence could be presented in the light most favorable to the government. The cross-examination of defense witnesses in the case was conducted entirely by AUSA Alan Friedman. Both Maffeo and Brozen testified that Friedman had neither seen the workpapers nor discussed the workpapers with them. Similarly, the record contained no evidence that the government used the papers to structure its presentation of evidence. Rather, AUSA Maffeo testified that the government was ready for trial in March of 1988, well before the workpapers were obtained.

Finally, Judge McLaughlin rejected Schwimmer's contention that the workpapers had provided new information used by the government to alter the figures on its spreadsheets. Judge McLaughlin found that, although several figures were different, the substance of the workpapers and of the government's original spreadsheets was the same. Alterations that had been made to the government's spreadsheets were predicated not upon Glickman's workpapers, but upon Glickman's negotiations with the government regarding the amount of Renda's forfeiture and upon the independent cooperation of a business associate of Renda.

We think the district court's rulings regarding the attorney-client privilege and the jury instructions given at the trial were correct.

## DISCUSSION

■ A district court's determination of whether the government improperly has used privileged information in a criminal prosecution is an issue of fact that will not be reversed unless the district court's finding is clearly erroneous. *United States v. Gallo*, 863 F.2d 185, 190 (2d Cir.1988), *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989). The government must demonstrate that the evidence it uses to prosecute an individual was derived from legitimate, independent sources. *Kastigar v. United States*, 406 U.S. 441, 461–62, 92 S.Ct. 1653, 1665–66, 32 L.Ed.2d 212 (1972). We believe that the district court's finding that no privileged information was used by the government in its prosecution of Schwimmer was not clearly erroneous because it is amply supported by the evidence produced at the hearing.

■ Relying on *United States v. McDaniel*, 482 F.2d 305, 311 (8th Cir.1973), Schwimmer argues that even the indirect use of privileged information by the prosecution is prohibited. However, we have expressly rejected the *McDaniel* holding as being too restrictive. *See United States v. Rivieccio*, 919 F.2d 812, 815 (2d Cir.1990); *United States v. Mariani*, 851 F.2d 595, 600 (2d Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989). In *Mariani*, we held that the mere "tangential[ ] influence[ ] [that privileged information may have on] the prosecutor's thought processes in … preparing for trial" was not an unconstitutional use. 851 F.2d at 600. Schwimmer contends that possession of the information contained in the workpapers allowed the government to confirm the information it had already acquired on its own; however, this use would not require reversal because confirmatory use is not prohibited under the circumstances of this case. *See id.* at 601. Here, the findings of the district court indicate that, at most, any influence on the government's case by information obtained at the interviews or from the workpapers was "wholly conjectural and insubstantial." *Id.* This does not constitute an improper use. *Rivieccio*, 919 F.2d at 815.

■ Schwimmer also contends that the intentional intrusion into the attorney-client

domain that occurred when the government agents obtained the workpapers requires an automatic reversal of his conviction. Although such an intentional intrusion warrants careful scrutiny, this Circuit never has gone so far as to adopt the per se rule for which Schwimmer argues. *United States v. Gartner*, 518 F.2d 633, 637 (2d Cir.), *cert. denied*, 423 U.S. 915, 96 S.Ct. 222, 46 L.Ed.2d 144 (1975). Rather, we have held that, unless "the conduct of the Government has ... been ... manifestly and avowedly corrupt," *Gartner*, 518 F.2d at 637, a defendant must show prejudice to his case resulting from the intentional invasion of the attorney-client privilege. *United States v. Dien*, 609 F.2d 1038, 1043 (2d Cir.1979); *see also United States v. Ginsberg*, 758 F.2d 823, 833 (2d Cir.1985).

Here, we find that the prosecution's conduct was not manifestly corrupt. Glickman was cautioned not to reveal confidential communications during the course of the interviews with government attorneys and investigators. Moreover, although the agents obviously obtained the workpapers intentionally, Schwimmer suffered no prejudice as a result. The hearing evidence demonstrated that no preview of defense strategy was derived from the workpapers and that no other violative use of privileged information had occurred.

■ Finally, we turn to the objections to the jury instructions noted in *Schwimmer I* but not addressed in that opinion. Schwimmer was convicted of violating 18 U.S.C. § 1954, which prohibits the receipt of illegal payments to influence the operations of employee benefit plans. The statute applies to, *inter alia*, "an administrator, officer, trustee, custodian, counsel, agent, or employee of any employee welfare benefit plan ..." *Id.* § 1954(1). At the trial's conclusion, the jury was instructed that even if Schwimmer was not designated formally as an agent or counsel to the employee benefit plans, he was subject to section 1954 if his advice had a significant influence on the plans' investment decisions. Schwimmer objected, maintaining that he was outside the scope of the statute because he did not hold any of the enumer-

ated positions. A defendant need not formally hold one of the enumerated positions to fall within the statute's coverage, however. Section 1954's "proscription extends to 'all persons who exercise control, direct or indirect, authorized or unauthorized[,] over [a plan],'" *United States v. Robilotto*, 828 F.2d 940, 946 (2d Cir.1987) (quoting *United States v. Palmeri*, 630 F.2d 192, 199 (3d Cir.1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981)), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 662 (1988).

Here, the trial evidence amply demonstrates that Schwimmer regularly gave financial advice to the employee benefit plans and invested their funds, indicating that he exercised, at a minimum, indirect control over the plans' investments. A trustee of Local 38's benefit plans testified that Schwimmer had been the financial advisor, with authority to make investment decisions, for Local 38's plans for about fifteen years. The trial evidence also showed that, from 1981 to 1986, Schwimmer had been the sole financial advisor to Local 810, investing more than $72 million on the fund's behalf.

■ Schwimmer's contention that the court erred by instructing the jury that evidence of actual control was not necessary to bring a defendant within the reach of the statute is also without foundation. We have held that "section 1954 ... does not necessarily require proof that the malefactor actually possessed the ability to influence a welfare fund's investment decisions," *Robilotto*, 828 F.2d at 946, but rather, the statute "proscribe[s] 'acceptance of payment with the stated purpose of exercising one's influence ...', regardless of capacity to do so,'" *id.* (quoting *United States v. Soures*, 736 F.2d 87, 90 (3d Cir. 1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985)). Here, not only did Schwimmer represent that he had the capacity to influence the employee benefit plans' investment decisions, as two witnesses at trial attested, but he actually advised the plans and made investments on their behalf. Clearly, his conduct is proscribed by section 1954.

Schwimmer also argues that the court's instruction with regard to Local 810, that compensation must be disclosed in order to fall within section 1954's "bona fide" compensation exception, was erroneous. In the jury charge, the court defined "bona fide" to mean "in good faith or without deceit or fraud." Later, in response to a jury request for clarification of the law governing Schwimmer's commissions on Local 810's investment activities, the court instructed that a fiduciary must disclose the actual commission he is charging in order to qualify for the bona fide compensation exception.

18 U.S.C. § 1954, prohibiting the receipt of fees to influence employee benefit plan operations, contains an exception allowing bona fide compensation "for services actually performed in the regular course of [the] duties" of those who exercise influence over the plan. "Bona fide" literally means in good faith, exclusive of fraud or deceit. It cannot be said that one who receives a commission from a financial institution for placing employee benefit plan funds, without disclosing to the plan the actual commissions received, is acting in good faith. Moreover, Schwimmer's interpretation weakens the force of the statute through which Congress intended to regulate strictly the administration and operation of employee benefit plans. *See* H.R. Rep. No. 998, 87th Cong., 2d Sess., *reprinted in* 1962 U.S.Code Cong. & Admin.News 1532, 1532–36. The evidence reveals that the trustees of Local 810 did not know that Schwimmer was receiving compensation from financial institutions through First United, the vehicle used by Schwimmer and his co-defendant to conduct their business. At trial, Local 810's comptroller testified that he assumed Schwimmer was receiving fees from a source other than the Local, but that he did not actually learn of Schwimmer's commissions until an investigation by Local 810 was conducted. Because section 1954 uses broad language to protect plan beneficiaries from dishonest or unfaithful fiduciaries, it seems clear that the statute was meant to reach Schwimmer's intentional failure to inform the trustees of Local 810 that he was extracting a commission from the placement of their investments. *See United States v. Romano*, 684 F.2d 1057, 1064 (2d Cir.), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 375, 376, 74 L.Ed.2d 509 (1982).

We have examined Schwimmer's remaining contentions and find them to be without merit.

### CONCLUSION

The judgment of conviction is affirmed in all respects.