UNITED STATES of America,

v.

John FULLER, Defendants.

No. S1 99CR1187 (CM).

United States District Court,
S.D. New York.

May 3, 2001.

Justin S. Weddle, Asst. U.S. Atty., Mary Jo White, U.S. Atty., New York City, for U.S.

## DECISION ON DEFENDANT'S PRETRIAL MOTIONS

McMAHON, District Judge.

John Fuller is charged in five counts of a six count indictment (S1 99 CR 1187) with various violations of the federal firearms laws. In substance, the indictment charges that from in or about August 1996 through in or about March 1999, John Fuller and other co-conspirators traveled to South Carolina, induced various individuals to purchase firearms for them, transported the firearms to the Southern District of New York, and sold them. Defendant is charged in a separate one-count indictment (00 CR 1104) with bail jumping.

Defendant's has filed a motion requesting dismissal of the indictment on the grounds that the Government's indictment of Mr. Fuller is based on evidenced improperly garnered from the immunized testimony of defendant to the Westchester County District Attorney's Office. The Government contends that no such evidence was presented to the grand jury. Defendant asks in the alternative that the Court suppress the introduction of all statements made by Mr. Fuller pursuant to his cooperation agreement with the District Attorney's Office. Defendant requests that the Court hold full hearings on the "*Kastigar* and other issues raised." Defendant further requests dismissal of count five on the grounds that it violates defendant's rights against double jeopardy under the Fifth Amendment and due process under the Fifth and Fourteenth Amendments. Finally, defendant asks that he be provided with additional discovery.

### Statement of Facts

On December 5, 1997, Mr Fuller pled guilty to criminal possession of a weapon in the Third Degree in Westchester County Court. Fuller was scheduled to be sentenced on February 20, 1998. However, on the date for sentence defendant was instead arrested for Grand Larceny by a Westchester County District Attorney's Office investigator. That complaint alleged that defendant obtained unauthorized funds through the use of an altered check and a forged check.

On February 20, 1998, shortly after his arrest on the new charges, Fuller entered into a cooperation agreement with the Westchester County District Attorney's Office. The cooperation agreement Mr. Fuller entered into with the Westchester County District Attorney obligated Fuller to "fully and fairly and truthfully disclose" information he had about criminal conduct,

to testify about those matters as needed, to "appear in court" when "required by law or requested by the District Attorney," and to refrain from committing any additional crimes. The agreement provides that, in exchange for defendant's cooperation, the District Attorney promised to: (1) inform the Court of the nature and extent of John Fuller's cooperation and will make a sentencing recommendation to the Court; (2) refrain from using statements made by in the furtherance of his cooperation against him in any criminal prosecution; (3) refrain from prosecuting Fuller for conduct committed in furtherance of his cooperation, provided that such conduct is authorized by the District Attorney's Office or its agent. (Weddle Affirmation, Exhibit H). The preamble to this section of the agreement expressly states that Fuller's failure to comply with any condition of this paragraph "shall be a violation of this agreement." (Id., ¶ 2)

Paragraph 4 of the Agreement sets forth the consequences of any violation of the agreement by Fuller. It provides as follows:

4. If John Fuller violates the agreement in any respect, as determined by the District Attorney and the Court:

(a) The District Attorney will request that sentence be imposed upon John Fuller's plea of guilty. The District Attorney may request that the sentence be the maximum sentence authorized by law, which is 5 to 15 years in state prison. The District Attorney will request, if necessary, that the sentence be imposed in John Fuller's absence. John fuller understands that the Court has the authority to impose any lawful sentence.

(b) The District Attorney may prosecute John Fuller for any crime he has committed, as authorized by law, *not* limited by paragraph 3(b) above.

(c) As to any prosecution brought by the District Attorney pursuant to this paragraph, John Fuller waives any claim that any statement or testimony he has made or given in the course of this cooperation with the District Attorney is inadmissible against him or that any property that the District Attorney has obtained from John Fuller is inadmissible against him. *A hearing before a judge shall determine whether John Fuller has materially violated the terms of this agreement and only after such determination is finally rendered can law enforcement and or the District Attorney's office act thereon.*

(d) Fuller waives any claim that any prosecution pending against him on the date of this agreement is barred either on ground of speedy trial, speedy arraignment. Adjournments taken on any pending prosecution are at defendant's request.

(Id., ¶ 4). The Italicized sentence was added to subparagraph (c) in handwriting and was initialed by the assistant district attorney and by Fuller's attorney.

The agreement begins with one disclaimer:

This memorandum of agreement constitutes the entire understanding between John Fuller and the District Attorney. There are no promises, agreements or conditions, express or implied, other than those set forth in this document. (Id., ¶ 1)

and ends with another:

This agreement is limited to the Westchester County District Attorney's Office and cannot bind other government agencies. (*Id.,* ¶ 5)

Fuller was represented by counsel at the time he signed the agreement.

Defendant was arrested by federal agents on July 29, 1999 at the Westchester County Courthouse, after appearing there as a witness in a criminal trial, and charged in a criminal complaint with Federal weapons charges. The Magistrate released defendant on bail and imposed various release conditions, including home detention with electronic monitoring. Defendant was charged in an indictment filed on November 24, 1999, and in a superceding indictment filed December 29, 1999, with substantially the same crimes charged in the initial criminal complaint. The current indictment (S1 99 CR 1187) (CM) charges defendant with: (1) Conspiracy to Commit Firearms Offenses; (2) Unlicensed Dealing in Firearms; (3) Interstate Travel with Intent to Further Firearms Dealing; (4) Interstate Transportation and Receipt of Firearms; (5) Felony in Possession; and (6) Possession with Intent to Distribute.

On January 26, 2000, Mr. Fuller failed to appear at his sentencing on the state charges. Defendant again failed to appear for sentence on March 1, 2000, at which time the state court judge sentenced defendant *in absentia*. Mr. Fuller also failed to appear at a pre-trial conference in this matter on February 23, 2000. Defendant was apprehended in September of 2000 and is currently incarcerated while awaiting trial.

The Government has indicated that it intends to introduce at trial certain statements made by Fuller to the District Attorney, including a video tape recorded by the District Attorney's Office in December 1998, in which defendant discusses, *inter alia*, the gun-running charges that are the subject of the present indictment. The instant motions to dismiss the indictment, or in the alternative to suppress introduction of the statements and the videotape, are grounded in the fact that they were made during the period of time Mr. Fuller was purportedly cooperating with the District Attorney, and that the statements made thereon were made pursuant to the cooperation agreement. Defendant also argues double jeopardy.

## CONCLUSIONS OF LAW

*1. The Motion to Dismiss the Indictment is Denied.*

Defendant claims that the indictment against Mr. Fuller is based upon defendant's "immunized" statements made to the Westchester County District Attorney's Office. Even, assuming for the sake of defendant's argument, that the Government did present to the grand jury evidence gleaned from statements of Mr. Fuller to the District Attorney's Office (which the Government denies)—and further assuming that those statements were protected from use by the Government by virtue of an "effective" cooperation agreement (one that expressly does not bind the United States)—defendant would not be entitled to a dismissal of the indictment.

"It is fundamental in our system of criminal justice that 'an indictment returned by a properly constituted grand jury is not subject to challenge on the grounds that it was based on unconstitutionally obtained evidence.'" *United States v. Rivieccio*, 919 F.2d 812, 814 (2d Cir.1990) citing, *United States v. Washington*, 431 U.S. 181, 185 n. 3, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977). The Supreme Court has repeatedly applied this rule to claims that an indictment was based on evidenced obtained in violation a defendant's privilege against self incrimination. *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The remedy for a

Fifth Amendment violation is to suppress the introduction of the privileged information at trial. *See United States v. Rivieccio*, 919 F.2d 812, 816 (2nd Cir.1990). Likewise, "the appropriate remedy for the improper use of immunized testimony before the grand jury is the suppression of the tainted evidence at trial," *not* dismissal of the indictment. *United States v. Rivieccio*, 919 F.2d at 816–17. Accordingly, defendant's motion to dismiss the indictment is denied.

■ Defendant's related motion for disclosure of the grand jury minutes is also denied. Federal Rule 6(e) provides that a defendant may obtain access to grand jury materials only "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Fed. R.Crim.P. 6(e). As stated above, the remedy for the improper use of immunized testimony before the grand jury is not dismissal of the indictment. As long as protected statements or information derived therefrom is not used at trial, any error occurring before the grand jury would be harmless beyond a reasonable doubt. *Rivieccio*, 919 F.2d at 817 & n. 5.

2. *The Motion to Suppress is Denied.*

(A) The Agreement Between the Defendant and the District Attorney is not Binding on the United States

■ The gravamen of defendant's motion to suppress is that the Government should be barred from using Fuller's statements at the upcoming trial because the District Attorney disclosed Fuller's statements to Federal agents and prosecutors wrongfully and in violation of his cooperation agreement. Specifically, Fuller contends that the District Attorney did not obtain a judicial determination that he (Fuller) had materially violated the terms of his agreement prior to sharing his statements with coordinate law enforcement personnel. Apparently, defendant takes the position that the Government's use of the improperly disclosed statements would be akin to introducing the fruit of some poisonous tree.

■ Pre-trial agreements, such as the cooperation agreement Mr. Fuller entered into with the Westchester County District Attorney, are to be interpreted according to the principles of contract law. *See United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir.1991)(citing *United States v. Khan*, 920 F.2d 1100, 1104 (2d Cir.1990), and *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.1990)). Whatever immunity was conferred upon Mr. Fuller is governed by the terms of the agreement reached by the parties. *See United States v. Castelbuono*, 643 F.Supp. 965, 969 (E.D.N.Y.1986).

■ On its face, the cooperation agreement is not binding on any governmental agency except the Westchester County District Attorney. (Paragraph 5). The language of the agreement bars the *Westchester County District Attorney* from introducing defendant's statements in connection with any criminal prosecution (Paragraph 3(b)), but it does not bar *the United States Attorney* from doing so.[1] This agreement is not the equivalent of an "immunity order," which would be binding on both the State and Federal Government. *See Kastigar v. United States*, 406 U.S. at 457–59, 92 S.Ct. 1653. Thus, noth-

---

1. Conversely, Fuller's waiver of any claim that any statement or testimony he has made or given in the course of his cooperation is inadmissible applies only to prosecutions commenced by the District Attorney. (Para- graph 4(c)) Thus, the Government's contention that Fuller has waived any challenge to the United States' use of the statements finds no support in the text of the agreement.

ing in the contract between Mr. Fuller and Westchester County appears to preclude the Federal Government from using defendant's statements in the present prosecution.

Defendant's attorney, by arguing that the Government lacks standing to attempt to enforce a breach in the cooperation agreement, actually bolsters the Government's position that it need not abide by the terms of the agreement. The defense argues that because the Government was not a party to the cooperation agreement, it cannot now "become a third party beneficiary to the contract." (Defendant's Letter 4/27/01). "They ask this Court to find a breach of a state agreement that they did not negotiate, did not participate in nor in anyway binds them" *Id.* Defendant is correct: the Government is not a party to the agreement and is therefore not bound by the terms of the agreement. The immunity conferred upon Mr. Fuller could only be binding on the only other party to the agreement: the Westchester County District Attorney. Indeed, in view of the explicit language in the Agreement, it is difficult to discern what defendant has to complain about. The District Attorney has not attempted to use Fuller's statements in any prosecution commenced by it.

Nonetheless, the defense continues to insist that the District Attorney has breached her agreement with him, and that the proper remedy for this breach is to exclude his statements from this trial. The Court has not been apprized of any precedent for this particular bootstrap argument, and none suggests itself as a matter of law or logic. In particular, defendant has no argument (and none was made in the motion papers) that he gave the statements involuntarily, because the terms of the agreement—including the term that no party except the District Attorney was bound thereby—are clear and conspicuous.

The Government denies the factual predicate of the defense motion, but also urges that this issue really arises under *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and must therefore abide the trial. The Government is correct (see below, p. 8–9). Assuming *arguendo* that the District Attorney gave Fuller's statements to Federal authorities without first obtaining a judicial declaration that Fuller was in breach of the agreement, and that the DA thereby did something wrong, then the only reason the statements ought not be used is that they were immunized. The parties have not yet come to grips with the fascinating question of whether a breach of the agreement by the District Attorney renders the statements immunized in this Court despite the fact that the agreement is not binding on the United States. If the statements are introduced and the defendant is convicted, we will all have to come to grips with it. The Government knows it acts at its peril if it chooses to introduce the supposedly immunized statements at trial.[2]

### (B) The Agreement Was in Fact Breached by Fuller

Despite my finding that the Government is not bound by the agreement, the Government asked that this Court, in an excess of caution, to hold a hearing into whether the agreement was in fact materially breached. It is not necessary for me to do so, because a state court judge has already made that determination. But I

---

**2.** By using the phrase "acts at its peril," I do not mean to suggest that I have predetermined the issue of whether Fuller's statements are immunized or whether the District Attorney did something improper by turning them over to the United States. That determination must come after the trial. See below, p 8–9.

make the identical determination based on the record before me.

 First, I dispose of defendant's claim that only a state court judge can determine whether the agreement was breached. By its terms, the agreement does not so provide. It says that "a judge" (which I am) shall make this particular determination after holding a hearing. Furthermore, by making explicit reference to "law enforcement or the District Attorney's office," the parties to the Agreement apparently contemplated that law enforcement agencies other than the Westchester DA's Office might need to resort to the hearing procedure before taking some action with regard to Fuller's statements—albeit only in connection with "any prosecution brought by the District Attorney pursuant to this paragraph [4]."

 Second, I find that a state court judge—the Hon. Joseph K. West, of the Westchester County Court—did make a finding that Mr. Fuller had materially breached the agreement. On January 26, 2000, Mr. Fuller failed to appear for sentencing before Judge West and the matter was adjourned. Mr. Fuller's was on Judge West's sentencing calendar again on March 1, 2000. Once again defendant failed to appear. After hearing from both the prosecutor and defendant's attorney, Judge West stated:

> Based upon the representations that have been made to this Court and *the fact that [Mr. Fuller] has a Federal warrant that is outstanding,* . . ., *and based on the fact that [Mr. Fuller] has failed to appear,* and based further on the fact that counsel has not indicated she's had any contact with the defendant or has any knowledge of his whereabouts or why he isn't here, . . ., and

also based on the fact that I find he acknowledged the so-called Parker warnings and indicated he understood them, based upon all of that I [find no] legal reason as to why this sentencing shouldn't take place, and I will sentence him in absentia as of this morning.

(Defendant's Exhibit M, p. 11–12) (Emphasis added). Before pronouncing sentence, Judge West stated that he had considered the arguments of the parties, the pre-sentence report, the sentencing promises that had been made by Judge LaCava at the time of the plea, *and the fact that defendant absented himself from both the State and Federal Courts. Id.* at 16. Judge West then sentenced Mr. Fuller *in absentia* to a term of 2 to 6 years. As defense counsel observed, this is far less than the maximum authorized—but nothing in the agreement compelled the DA to request, or the judge to impose, the maximum sentence on Fuller. As contemplated by Paragraph 4(a) of the agreement, the sentence was imposed in John Fuller's absence.

Defendant's complaint that this determination was not made following "a hearing" is simply absurd. There is no requirement that the hearing before a judge take any particular form. In this particular case, Mr. Fuller was the only necessary witness, and he testified eloquently by his absence. No other evidence was needed to support Judge West finding that Fuller had breached the agreement by failing to appear for sentencing. The District Attorney made the request contemplated by Paragraph 4(a), and the Judge's imposition of sentence necessarily meant that he found a material breach of the agreement. It would have been hard not to make such a finding, since defendant was manifestly not in court when he was supposed to be.[3]

---

3. Any determination that Fuller had materially breached the agreement by engaging in an

interstate gun-running operation without the knowledge of the Westchester County District

Finally, to the extent any hearing is required prior to introduction of the defendant's statement at his Federal trial (and I do not think one is required), one was held on May 2, 2001. At that time, the defendant stipulated that he had not been present for his sentencing on January 26, 2000, and the Government introduced transcripts demonstrating this fact. This was clearly a material breach of the agreement. I make this finding for whatever a higher court may think it worth, not because I believe it is a necessary predicate to the introduction of Fuller's statements at this trial.

### (C) There is No Other Basis to Exclude The Statements at Trial

At oral argument on the instant motions, defense counsel suggested (for the first time) that the videotaped statements made by Fuller should be excluded on a second and separate ground—namely, that they were taken from him involuntarily, in that defendant was led to believe that he was not being videotaped. This argument comes too late, as the date for making defense motions (other than in limine motions) passed on February 15, 2001. However, I have reviewed those portions of the videotape to which counsel adverted, and I find that they do not support Fuller's argument. Indeed, my review of the tape reveals that Fuller (1) was told by representatives of the Westchester DA's Office that there was a video camera in the interview room; (2) walked up to the one-way mirror behind which he presumed (correctly) that the camera was located and said, "Yeah, you guys tape" or "You guys are taping;" (3) did not ask that the camera be turned off; (4) did not refuse to speak to the interviewers. Moreover, the state-

ments by the detective, in which he challenged Fuller to try to figure out why law enforcement would want to tape an interview with a cooperator, did not constitute some sort of coded assurance that the videotape was not recording the interview.

█ In any event, even if Fuller were under the misimpression that he was not being videotaped, that would not render the statement involuntary in the constitutional sense, so as to prevent its introduction at trial. *See Hendricks v. Swenson,* 456 F.2d 503 (8th Cir.1972)(Defendant's constitutional rights were not impinged by reason of the fact that his statements, which were freely and voluntarily given to the police, were recorded on video tape, or by the fact that the recording was shown to the jury after a proper foundation for its admission had been laid.).

No party has suggested any other basis for excluding the statements. They are admissible.

### (D) Defendant's Request for a *Kastigar* Hearing is Denied as Premature

█ The really interesting issue in this case is whether the Westchester District Attorney's Office has somehow tainted the instant prosecution by providing Federal authorities with copies of Fuller's statements and with the videotape prior to obtaining a judicial ruling that Fuller had breached the agreement—or, put otherwise, that the District Attorney's breach of her obligations (by providing copies of the statements and the videotape to the Federal prosecution team) means that Fuller's immunized statements cannot be used at trial without violating *Kastigar.* This argument loses some of its force in view of my determination that Judge West made

Attorney while he was cooperating would, of course, have to abide the results of this trial. Fuller's decision to absent himself from his

sentencing made life easier for everyone except himself.

the necessary finding of material breach on March 1, 2000. However, defense counsel argues that it is inherently implausible to believe that the case agents and/or the Assistant United States Attorneys who worked on this matter were not apprised of Fuller's statements prior to that date, and indeed, prior to the indictment. Defendant believes that this requires dismissal of the indictment under *Kastigar*.

In *Kastigar* defendants were ordered to appear before a grand jury and to answer questions under a grant of immunity. The defendants subsequently refuse to answer questions in the grand jury, asserting their privilege against compulsory self-incrimination. The United States District Court for the Central District of California adjudged defendants to be in civil contempt and ordered them confined. The Court of Appeals, Ninth Circuit, affirmed, 440 F.2d 954. The Supreme Court granted certiorari, and, speaking through Mr. Justice Powell, held that although a grant of immunity must afford protection commensurate with that afforded by the privilege against compulsory self-incrimination, it need not be broader, and immunity from use and derivative use is coextensive with the scope of the privilege and is sufficient to compel testimony over claim of privilege. The Court also held that in any subsequent criminal prosecution of a person who has been granted immunity to testify, the prosecution has the burden of proving affirmatively that evidence proposed to be used is derived from a legitimate source wholly independent of compelled testimony.

Defendant's request for a *Kastigar* hearing was prematurely brought. As explained by the Second Circuit, *Kastigar* concerns the improper use of immunized statements at *trial*, any hearing to determine whether the Government relied upon such evidence should be deferred until af-

ter all the evidence has been presented and the trial concluded. *United States v. Gregory*, 611 F.Supp. 1033, 1042 (S.D.N.Y. 1985); *United States v. Volpe*, 42 F.Supp.2d 204, 219 (E.D.N.Y.1999)(Nickerson, J.), aff'd. 224 F.3d 72 (2d Cir.2000); *United States v. Helmsley*, 941 F.2d 71, 80 (2d Cir.1991)(determination of defendant's pre-trial motion for a *Kastigar* hearing postponed until after the trial "at which time [Judge Walker] could determine with the benefit of trial evidence whether there was a sufficient nexus between the immunized testimony and the federal prosecution to warrant a hearing"); *United States v. Rivieccio*, 919 F.2d at 814 (*Kastigar* hearing deferred until after trial); *United States v. Fernandez*, 2000 WL 1409738, *3 (S.D.N.Y. Sept.22, 2000)("It is the general practice in this Circuit to defer a [*Kastigar*] hearing until after trial. After the trial a court can better evaluate the Government's evidence and avoid disclosure of the Government's proof before trial."). Defense counsel conceded at oral argument that this was the law. Therefore, the motion for a *Kastigar* hearing is denied without prejudice to its renewal in the event defendant is convicted. At that time, we will fully explore the basis on which the Fuller's Federal prosecution was commenced.

### 3. The Motion to Dismiss Count Five on Double Jeopardy Grounds is Denied

 Defendant's motion to dismiss Count Five on Double Jeopardy grounds is denied. Defendant contends that Count Five charges "exactly the same conduct that Mr. Fuller was arrested, pleaded guilty and was sentenced on in state court." (Defendant's Notice of Motion). It is a well-established principle that a federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one. The basis for

this doctrine is that "prosecutions under the laws of separate sovereigns do not, in the language of the Fifth Amendment, 'subject [the defendant] for the same offence to be twice put in jeopardy.'" *United States v. Wheeler*, 435 U.S. 313, 316–17, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). There is an exception to the dual sovereignty doctrine, known as the *Bartkus* exception. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Under the Bartkus exception "the Double Jeopardy Clause may be violated despite single prosecutions by separate sovereigns when one prosecuting sovereign can be said to be acting as a tool of the other." *United States v. All Assets of G.P.S. Automotive Corp.*, 66 F.3d 483, 494 (2d Cir.1995).

> In recognizing the *Bartkus* exception, our precedents, like those of other circuits, make clear that it applies only in an extraordinary case, perhaps only when one sovereign has essentially manipulated another sovereign into prosecuting. Specifically, we have repeatedly held that even significant cooperation between state and federal authorities does not provide a basis for applying the *Bartkus* exception.

*Id.* (citations omitted). Defendant has not made the requisite showing that either the Federal Government or the State manipulated the other in its prosecution of the defendant. Accordingly, this is not the extraordinary case in which the *Bartkus* exception applies.

 The Court notes that even if the dual sovereignty doctrine did not apply, defendant's motion to dismiss count five should be denied because defendant's state court firearms conviction was for a different crime then the crime charged in count five. To determine whether two counts "violate a defendant's right under the double jeopardy Clause of the Fifth Amendment we apply the 'same elements test,' also known as the "Blockburger" test, taking its name from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). We ask "whether each count contains an element not contained in the other." If so, the offences "are not the same offence for the purpose of double jeopardy." *United States v. White*, 240 F.3d 127, 132 (2d Cir.2001) (quoting *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir.1999)).

The elements of Criminal possession of a weapon to which defendant pled guilty in state Court are that the firearm is loaded and that the loaded firearm was possessed outside the defendant's home or place of business. *See* N.Y. Penal Law § 265.02(4). The felon-in-possession charge in count five of the federal indictment requires that the defendant be a convicted felon and that possession of the firearms affects interstate commerce; it does not include an element that the firearm be loaded or that it be possessed outside a defendant's home or place of business. *See United States v. Smith*, 160 F.3d 117, 122 n. 2 (2d Cir.1998). The state charge for which Mr. Fuller was convicted and count five of the federal indictment each contains an element not contained in the other, and therefore, are not the same offence for the purpose of double jeopardy.

4. The Motion to Compel Further Discovery by the Government is Denied.

Defendant seeks a court order compelling the Government to disclose: all of the investigative file, including but not limited to all the notes reports, and references in reports or summaries of reports from Westchester County and its agents including but not limited to District Attorney Jeanine Pirro ...; all relevant documents, notes memos, recordings summaries in

control of the Secret Service, Agent Centrella and Agent Breslin, and Postal Inspectors including but not limited to Agents Greg Tutelian, and; the identities of any informant.

It is a bit late in the day for discovery motions. We are presently ten days from trial. Discovery was (or should have been) over long ago.

 To the extent defendant is seeking from the United States Attorney the entire Westchester County District Attorney's file on John Fuller, that request is denied. The Government is required to produce only that which is in the Government's custody or control. Fed.R.Crim.P. 16. The Government represents that it has given defendant all of the materials it received from the District Attorney, with the exception of certain phone records that the District Attorney's Office later realized were disclosed in error. The defense has not indicated what materials the Government had failed to produce. Of course, to the extent that Fuller is seeking early production of Jencks Act or 3500 materials, the Government has already agreed to produce those materials on the Thursday prior to trial—which is in advance of its statutory obligation to produce.

Defendant's request for all relevant documents in the control of the United States Secret Service or Postal Inspectors is quite general and arguably not germane to this proceeding—the current prosecution of Mr. Fuller apparently involved only the Bureau of Alcohol, Tobacco & Firearms. The Government represents that it has produced all discoverable material in its possession, and again, the defense has not explained what is missing from the production. The defendant has made a specific request for documents in the control or possession of Agent Mike Centrella and Michael Breslin of the Secret Service and Postal Inspector Greg Tutelian, who purportedly had some involvement in Fuller's Westchester County prosecution. Although the Government states that these agents had no involvement in the present prosecution, the Government has agreed to inquire of these agents to determine whether they have any discoverable material. To the extent that Fuller is seeking material to buttress his *Kastigar* claim, his requests are premature, since the hearing will not take place until after the trial has concluded.

Based on the Government's representation that it is aware of its obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, and that the Government will continue to provide such information to the defendant in a timely fashion, this Court will not issue an order compelling the production of such materials. *See, e.g., United States v. Gallo,* 1999 WL 9848, at *7 (S.D.N.Y. Jan. 11, 1999); *United States v. Perez,* 940 F.Supp. 540, 543 (S.D.N.Y.1996) ("Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to Brady where the Government, as here, has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under Brady."). *Giglio* material should be turned over with the 3500 material by the Thursday before trial.

The parties are directed to appear for a final pre-trial conference at 9:00 AM on Friday, May 11. Jury selection is scheduled for Monday, May 14, at 9:30 AM.

This constitutes the decision and order of the Court.